FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ JUN 2 1 2011 ★

BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

CV11 - 2953

THOMAS TELLEFSEN and MICHELLE
LAPLANT,

        Plaintiffs,

        v.

ENCORE CAPITAL,
MIDLAND FUNDING, LLC d/b/a in NEW YORK
MIDLAND FUNDING OF DELAWARE LLC,
MIDLAND CREDIT MANAGEMENT, INC.
PRESSLER & PRESSLER, LLP,
ACCURATE CONSULTING, INC., and
LUCAS S. MAGARIK,

        Defendants.

**COMPLAINT AND DEMAND**
**FOR JURY TRIAL**

**SUMMONS ISSUED**

**MAUSKOPF, J.**

**GOLD, M.J.**

## I. INTRODUCTION

1.    This is an action for money damages and injunctive relief by an individual consumer for

Defendants' repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, et

seq. ("FDCPA"), Fair Credit Reporting Act, 15 U.S.C. Section 1681, et seq. ("FCRA"), New

York General Business Law § 349 ("NYGBL"), New York Administrative Code § 20-403, et

seq. ("NYC Admin. Code"), common law fraud and deceit, trespass to chattels, conversion,

negligence, gross negligence, and negligent supervision.

## Table of Contents

I.      INTRODUCTION..................................................................................1

II.     JURISDICTION AND VENUE.................................................................4

III.    PARTIES..........................................................................................4

IV.     ENCORE'S AND PRESSLER'S BUSINESS PRACTICES...............................8

V.      FACTS RELATING TO MR. TELLEFSEN AND MS. LAPLANT.....................10

        A.  Magarik Swears to – and Pressler Files – Patently False Affidavit of Service.....12

        B.  Midland Funding Files Affidavit of Kristine Drews.....................................17

        C.  Pressler Files False "Affirmation of Account Purchase"...............................20

        D.  Attorney Zipkin Affirms Fraudulent Affidavit of Service...............................23

VI.     MR. TELLEFSEN SUFFERS EXTREME ACTUAL DAMAGES....................... 25

        A.  Credit Damage and Financial Harm...................................................... 25

        B.  Injury to Family and Work Relationships................................................27

        C.  Mr. Tellefsen Suffers Physical Injuries................................................. 28

VII.    FIRST CLAIM FOR RELIEF AGAINST ENCORE, MIDLAND, PRESSLER,
        MAGARIK, AND ACCURATE (Violations of the FDCPA)............................. 28

VIII.   SECOND CLAIM FOR RELIEF AGAINST MIDLAND, ENCORE,
        AND PRESSLER (Violations of the FCRA)................................................32

        A.  Punitive Damages Warranted under the FCRA..........................................37

IX.     THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
        (Common law fraud and deceit)............................................................37

X.      FOURTH CLAIM FOR RELIEF AGAINST MAGARIK AND ACCURATE
        (Violation of NYC Admin. Code § 20-403, et seq.).......................................39

XI.     FIFTH CLAIM FOR RELIEF AGAINST ENCORE, MIDLAND FUNDING,
        MIDLAND CREDIT, AND PRESSLER

(Trespass to Chattels)...............................................................................41

XII.    SIXTH CLAIM FOR RELIEF AGAINST ENCORE, MIDLAND, AND PRESSLER
        (Conversion)..................................................................................42

XIII.   SEVENTH CLAIM FOR RELIEF AGAINST ENCORE, MIDLAND FUNDING,
        MIDLAND CREDIT, AND PRESSLER
        (Negligence)..................................................................................43

XIV.    EIGHTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
        (Gross Negligence/Willful Misconduct)....................................................44

XV.     NINTH CLAIM FOR RELIEF AGAINST ENCORE, MIDLAND FUNDING,
        MIDLAND CREDIT, PRESSLER, AND ACCURATE
        (Negligent Training and Supervision).......................................................45

XVI.    TENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
        (Violation of NYGBL § 349)...............................................................47

XVII.   PUNTIVE DAMAGES NECESSARY TO PUNISH DEFENDANTS AND DETER
        FUTURE BEHAVIOR...........................................................................49

## II.  JURISDICTION AND VENUE

2.     Jurisdiction of the court is conferred by 15 U.S.C. §1692k(d), 15 U.S.C. §1681p, and 28

U.S.C. §1331 in that this dispute involves predominant issues of federal law. Defendants have

violated provisions of the FDCPA, FCRA, and have violated Mr. Tellefsen's procedural right to

due process under the Bill of Rights and Fourteenth Amendment of the Constitution of the

United States.

3.     Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

4.     Declaratory relief is available pursuant to 28 U.S.C. §§2201 and 2202.

5.     Venue in this District is proper in that the defendants transact business here and the

conduct complained of occurred here.

6.     The defendants regularly do business within this district, and have engaged in a persistent

course of conduct within this district. The defendants have also derived substantial revenue from

services rendered in this judicial district and state.

7.     The defendants expected or should have reasonably expected the acts alleged in this

complaint would have consequences in this judicial district and state. The defendants derive

substantial revenue from interstate commerce.

8.     The defendants have otherwise sufficiently conducted business and/or purposefully

availed themselves of the privileges and benefits of this judicial district and state.

9.     Defendants caused transactions and occurrences alleged in this complaint to take place in

this judicial district and state.

## III.  PARTIES

10.    Plaintiff THOMAS TELLEFSEN ("Mr. Tellefsen") is a natural person who resided at all

relevant times in Richmond County, New York.

4

11.    Plaintiff MICHELLE LAPLANT ("Ms. LaPlant") is a natural person who resided at all relevant times in Richmond County, New York.

12.    Plaintiffs Mr. Tellefsen and Ms. LaPlant at all relevant times resided together at 3855 Amboy Road, Unit 2, Staten Island, NY 10308-2418 ("The residence").

13.    Mr. Tellefsen is a "consumer" as defined by §1692a(3) of the FDCPA.

14.    Mr. Tellefsen is a "consumer" as defined by §1681a(c) of the FCRA.

15.    Ms. LaPlant is an aggrieved party and a "person" as defined by §1692k of the FDCPA.

16.    ENCORE CAPITAL GROUP ("Encore") is a publically held corporation that trades on the NASDAQ under the Symbol "ECPG."

17.    Encore owns defendant Midland Credit Management, Inc. ("Midland Credit"). Midland Credit owns Midland Portfolio Services, Inc., which owns defendant Midland Funding, LLC. All of these entities share the same headquarters address of 8875 Aero Drive, Suite 200, San Diego, CA 92123. Encore, Midland Credit, and Midland Funding are hereinafter referred to as "the Encore Defendants."

18.    Encore files, on behalf of the Encore Defendants, quarterly 10-Q reports with the Securities and Exchange Commission.

19.    Encore is a foreign corporation that is regularly engaged in the collection of debts in the state of New York.

20.    Encore's principal place of business located at 8875 Aero Drive, Suite 200 San Diego, California 92123.

21.    The principal purpose of Encore is the collection of debts using the instrumentalities of interstate commerce, including mails and telephone, and Encore regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

5

22.     Encore is a "debt collector" as defined by 15 U.S.C. §1692a(6) of the FDCPA.

23.     Defendant Midland Funding, LLC d/b/a in New York as MIDLAND FUNDING OF DELAWARE, LLC ("Midland Funding") is a foreign limited liability company that is regularly engaged in the collection of debts in the state of New York.

24.     Midland Funding's principal place of business located at 8875 Aero Drive, Suite 200 San Diego, California 92123.

25.     The principal purpose of Midland Funding is the collection of debts using the instrumentalities of interstate commerce, including mails and telephone, and Midland Funding regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

26.     Midland Funding is a "debt collector" as defined by 15 U.S.C. §1692a(6) of the FDCPA.

27.     Defendant MIDLAND CREDIT MANAGEMENT, INC. ("Midland Credit") is a foreign corporation that is regularly engaged in the collection of debts in the state of New York.

28.     Midland Credit's principal place of business located at 8875 Aero Drive, Suite 200 San Diego, California 92123.

29.     The principal purpose of Midland Credit is the collection of debts using the instrumentalities of interstate commerce, including mails and telephone, and Midland Funding regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

30.     Midland Credit is a "debt collector" as defined by 15 U.S.C. §1692a(6) of the FDCPA.

31.     All acts done by Defendant Encore Capitol were done on its own behalf and on behalf of Midland Funding and Midland Credit.

32. All acts done by Midland Funding were done on its own behalf, and on behalf of Encore Capital and Midland Credit.

33. All acts done by Midland Credit were done on its own behalf and on behalf of Encore and Midland Funding.

34. Pressler & Pressler, LLP ("Pressler") is a foreign registered limited liability partnership regularly engaged in the collection of debts in the state of New York.

35. Defendant Pressler's principal place of business is located at 7 Entin Road, Parsippany, NJ 07054-9944.

36. The principal purpose of Pressler is the collection of debts using the instrumentalities of interstate commerce, including mails and telephone, and Pressler regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

37. Pressler is a "debt collector" as defined by 15 U.S.C. §1692a(6) of the FDCPA.

38. All acts done by Pressler were done on its own behalf and on behalf of The Encore Defendants.

39. ACCURATE CONSULTING, INC. ("Accurate") is a New York State domestic business corporation engaged in the business of serving process on consumer debtors.

40. Accurate lost the exempt protection of FDCPA §1692a(6)(D) when it acted beyond a mere messenger and engaged in prohibited, abusive and harassing activities to force Mr. Tellefsen to pay the alleged debt. Among other acts, Accurate made false, perjured statements in its affidavit of service that was used and filed in order to intentionally deceive the court and Mr. Tellefsen.

41. Accurate is therefore a "debt collector" as defined by 15 U.S.C. §1692a(6) of the FDCPA and is subject to the FDCPA.

7

42.    Defendant Accurate's principal place of business is located is located at 248 West Park Avenue, Suite 190, Long Beach, New York 11561.

43.    All acts done by Accurate were done on its own behalf, on behalf of Pressler, and on behalf of The Encore Defendants.

44.    Defendant LUCAS S. MAGARIK ("Magarik") at all relevant times was a natural person.

45.    Magarik at all relevant times was a licensed process server.

46.    Magarik at all relevant times was an employee and/or agent of Accurate.

47.    All acts done by Magarik were done on his behalf, and on behalf of Pressler, and on behalf of The Encore Defendants.

48.    Magarik lost the exempt protection of FDCPA §1692a(6)(D) when he acted beyond a mere messenger and engaged in prohibited, abusive and harassing activities to force Mr. Tellefsen to pay the alleged debt. Among other acts, Magarik made false, perjured statements in its affidavit of service that was used and filed in order to intentionally deceive the court and Mr. Tellefsen.

49.    Magarik is therefore a "debt collector" as defined by 15 U.S.C. §1692a(6) of the FDCPA and is subject to the FDCPA.

50.    The alleged debt at issue arose out of a transaction that was primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. §1692a(5). The alleged debt was allegedly bought after Mr. Tellefsen's default on a credit card debt.

51.    At all times material to this complaint, Defendants sought to collect monies under an alleged consumer credit account.

52.    All factual allegations averred herein are made upon information and belief unless stated otherwise.

## IV. ENCORE'S AND PRESSLER'S BUSINESS PRACTICES

53.    The plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.

54.    Encore is the nation's largest distressed consumer debt buyer. It collects on at least 20 million distressed consumer credit accounts.

55.    Encore's business model is to purchase charged-off and delinquent debt for pennies on the dollar and then engage in aggressive, factory-style collections.

56.    Encore uses computer automated, high volume, state court litigation in the collection of distressed debt. Due to the nature of the purchased distressed debt, extremely high volumes, and the automation, the defendants are physically unable to meet the requirements of the rules of evidence of providing proof of the records without misleading and deceiving the courts.

57.    The Encore Defendants hire collection agencies as "robo-signers," who sign several hundred affidavits per day, falsely claiming they are business records custodians with a personal knowledge of the facts. They falsely claim in the affidavit knowledge of the assignment(s) of the debt, the amount of the debt, the interest rate, the default of the debt, the alleged credit terms, and the record keeping procedures of every bank in America.

58.    The Encore Defendants rely on the fact that approximately 90% of the consumer debtors they sue do not appear in the case and challenge the deficient evidence. For that reason, Encore simply elects to ignore state rules and laws when using the judiciary system.

59.    Encore seeks the element of surprise by surreptitiously securing default judgments against consumer debtors without due process.

60.    Encore has been accused and sued for a) filing lawsuits without authority; b) filing falsified and defective sworn affidavits used in court proceedings; c) pursuing debts that are not

actually owed by the person being targeted; d) filing time-barred claims; e) ignoring validation demands; f) unlawful third-party contacts; and g) abusive, harassing phone calls.

61.     Minnesota Attorney General Lori Swanson has filed a lawsuit against Midland Funding, LLC.  Attorney General Swanson accused the company of using "robo-signed affidavits" in order to obtain judgments or extract payments from unrepresented citizens, some of whom who had no knowledge of any alleged debt.

62.     The Encore Defendants and Pressler use the courts to force communication with debtors and to mass-produce default judgments.

63.     Defendant law firm Pressler files up to 10,000 consumer debt lawsuits per year – in New York City alone – and colludes with debt buyers such as the Encore Defendants to benefit financially by engaging in factory style collections without due regard to debtors' procedural and substantive rights.

64.     All named defendants operate together with each participating in producing and filing falsified pleadings and affidavits to achieve the 90-plus percentage rate of default judgments that permit the defendants to take the consumer's money directly from their bank accounts or wages.

65.     Defendants' repeated and willful noncompliance of the rules of evidence and legal precedent represents a wanton abuse and fraud upon the court system.

## V.  FACTS RELATING TO MR. TELLEFSEN AND MS. LAPLANT

66.     The Encore Defendants never had possession of any debt belonging to Mr. Tellefsen.

67.     The Encore Defendants harassed Mr. Tellefsen and his wife from on or before May 2009 up to the present.

68.     Midland Credit has been furnishing false credit information since May of 2009 up through the present.

10

69.     Midland Credit claims to have purchased the debt in May of 2009, the date it began its impermissible campaign to impugn Mr. Tellefsen's credit worthiness and financial reputation by reporting false information against him on his credit files.

70.     On February 4, 2010, Midland Funding and Pressler filed suit in Civil Court, Richmond County in <u>Midland Funding LLC d/b/a In New York as Midland Funding of Delaware LLC v. Thomas Tellefsen</u>, index # 2557/10. A true and complete copy of the Summons and Complaint is attached as **Exhibit 1**.

71.     The complaint alleges that Midland had "taken assignment of" and is "owner" of CITIBANK account number 5424180556711013. Mr. Tellefsen denies ever possessing this account. The account number alleged in the complaint does not match any account number in Mr. Tellefsen's credit reports.

72.     The complaint alleges a balance of $2,180.21 under its first cause of action sounding in breach of contract.

73.     Midland has produced no evidence of any contract. Midland's second cause of action sounds in account stated. In ¶ 8, Midland and Pressler allege that "Plaintiff's predecessor in interest mailed monthly statements required by the agreement to the defendants thereby rendering a full just and true account of all unpaid amounts charged by the defendants which are due and owing, and defendants received, accepted and retained same without objection."

74.     Michael Zipkin of Pressler possessed no knowledge as to whether Plaintiff's predecessor mailed monthly statements to Mr. Tellefsen.

75.     Attorney Zipkin possessed no knowledge or evidence as to whether any just amount of any debt was due or owing, or whether Mr. Tellefsen received, accepted, and retained any account statements without objection.

76.     Attorney Zipkin had no reasonable basis to sign the complaint attesting to its factual averments.

77.     Pressler was among the debt collectors accused by the Attorney General and the Chief Administrative Judge of New York State, the Honorable Ann Pfau, of using process servers who intentionally failed to properly serve New Yorker consumers. See Pfau v. Forster & Garbus. In many of these cases, the process server claimed to be at several locations at once. The practice, known as "sewer service" is a classic unfair debt collection practice. The Attorney General settled its claims against Pressler in November of 2010.

**A.**     **Magarik Swears to – and Pressler Files – Patently False Affidavit of Service**

78.     The entire affidavit of service (**Exhibit 2**) by Lucas S. Magarik is patently false.

79.     The only accurate statement on the affidavit is Mr. Tellefsen's address of 3855 Amboy Road, Apt. 2, Staten Island, NY 10308 ("the house").

80.     Magarik's physical description of the house is flatly contradicted by clear, authenticated photographs (**Exhibit 3**) of the house.

81.     On May 12, 2010, Magarik described Mr. Tellefsen's house as a 2-story, white duplex. Exhibit 3 contains two photographs, one taken on July 7, 2009 and the other December 28, 2010, show that the color of the house was and is a vivid blue.

82.     The color of the house had not changed or been painted between July 7, 2009 and December 28, 2010.

83.     Magarik states "buzzer #2 to the *left* of the white door." A clear photograph shows that the doorbells of the house are situated one on top of the other. Secondly, the buzzers are located to the *right* of the doors.

12

84.   Magarik states, "Driveway to the *left* of the house." In fact, the driveway is to the *right* of the house – not the left.

85.   Magarik did not attempt service or observe the physical description of the house on May 12, 2010, as averred in the affidavit.

86.   Magarik did not attempt service on May 13, 2010 as averred in the affidavit.

87.   Magarik did not attempt or complete service on May 14, 2010 as averred in the affidavit.

88.   Magarik never intended to properly serve Mr. Tellefsen.

89.   Defendants Accurate and Pressler knew or should have known that Magarik never intended to properly serve Mr. Tellefsen.

90.   Defendants Accurate and Pressler encouraged Magarik's sewer service by paying Magarik so little for completed service on Mr. Tellefsen.

91.   Magarik did not complete service by mailing any copy of the summons and complaint to Mr. Tellefsen at any address.

92.   Accurate, Magarik, and Pressler never took reasonable steps to ascertain the correct address of Mr. Tellefsen.

93.   Magarik did not sign the affidavit before notary Jessica Patton.

94.   Jessica Patton notarized the affidavit of service outside the presence of Magarik and on a different date than when Magarik signed it.

95.   Defendants Accurate, Pressler, Encore, and Midland Funding knowingly filed and/or caused to be filed a patently false affidavit of service.

96.   To obtain the default judgment, the defendants filed, or had filed, Magarik's falsified affidavit swearing service on Mr. Tellefsen.

97.     The court relied on the falsified and illegally executed affidavit of service in order to award Midland Funding a default judgment.

98.     Mr. Tellefsen – and the courts – relied on the presumption that the affidavit of service was truthful. They must be able to rely on the truthfulness of the affidavit for the court to render a decision in the state actions that they commence, leaving no question as to the validity and fairness of the courts' decisions. Instead, defendants' misconduct has engendered service litigation adding costs to Mr. Tellefsen and others similarly situated.

99.     Since the affidavit of service was perjured, further burden and costs were placed upon Mr. Tellefsen and the state court to directly challenge that perjured affidavit.

100.    But for the false statements contained in the affidavit of service – and the subsequent lack of service – Mr. Tellefsen would not have been forced to engage in needless service litigation. Mr. Tellefsen was justified in hiring an attorney to prepare a motion to dismiss because had he not, his jurisdictional defense would have been waived.

101.    Accurate, as principle, is liable for the fraudulent acts of its agent, Magarik, that were committed within the scope of Magarik's authority. The creation and/or submission of the affidavit of service were done in furtherance of Accurate's business practice and with Magarik's apparent or actual authority.

102.    Encore, as principle, is liable for the fraudulent acts of its agent, Pressler, that were committed within the scope of Pressler's authority. The creation and/or submission of the affidavit were done in furtherance of Pressler's business practice and with Pressler's apparent or actual authority.

103.    Accurate is liable for the acts of Magarik because it ratified his fraudulent acts and retained the benefits derived therefrom.

14

104.    Pressler is liable for the acts of Magarik because it ratified his fraudulent acts and retained the benefits derived therefrom.

105.    Encore and Midland are liable for the acts of Magarik, Accurate, and Pressler because Encore ratified their fraudulent acts and retained the benefits derived therefrom.

106.    The Encore Defendants and Pressler knowingly authorized Magarik to file a false affidavit of service to mislead the civil court and the consumer defendant.

107.    The Encore Defendants and Pressler pay Magarik and other process serving agencies only for completed service, thereby knowingly promoting the use of false affidavits of service.

108.    The defendants deceitfully, intentionally, and recklessly tendered bad information to Magarik that they knew, or should have known, would be misused to perpetrate a fraud upon Mr. Tellefsen and the court.

109.    Defendants obtained the default judgment by fraud, misrepresentation, illegality, unconscionability, and other illegalities.

110.    When false affidavits of service are relied upon to form the basis of a default judgment, a defendant is deprived of his or her opportunity to appear and answer the summons and complaint, and to prevent a wrongful default judgment. The harm to such defendants is substantial, as they become subject to judgments to which they had no opportunity to be heard or present any cognizable defense. The defendants suffer the significant collateral consequences of having judgment entered against them.

111.    Pressler and Encore cannot turn a blind eye from the misconduct of their process serving agents. The relationship between Magarik, Accurate, and Pressler is similar in nature in that they all benefit from fraudulent service.

15

112.   All defendants work together to force communication on debtors, and all benefit from the bad service carried out together. The defendants never intended to substantiate the affidavit of service when called to such duty. They simply fail to appear without explanation.

113.   Therefore, Accurate, Pressler, and The Encore Defendants are responsible for Magarik's acts under the doctrine of *respondeat superior* and the law of agency.

114.   Pressler and Encore further had the nondelegable duty to exercise due care in assuring proper service of process.                                                                                     .

115.   Under the law of agency, Magarik was not an independent contractor to Pressler. Magarik alleged to have served the plaintiff on behalf of Pressler as evidenced by Pressler's name and address prominently displayed on the affidavit of service. Magarik conducted himself under the apparent authority of Pressler. Magarik did not operate free from the control of Pressler.  Pressler determined who and how to serve the consumer debtors. Pressler instructed certain methods of service to Magarik, and paid him a similar low rate over an extended period of time. Magarik derived a substantial portion of his income from assignments by Pressler.  As a whole, Magarik was subject to the direction and control of Pressler as to the manner or method of performing the work.

116.   Mr. Tellefsen and the courts relied, detrimentally, on the falsified affidavit.

117.   Debt collection law firms like Pressler plainly benefit from sewer service. By not serving consumer defendants, debt collection firms like Pressler and debt buyers like Encore are able to generate hundreds of thousands of judgments on cases where they could not prevail on the merits because they do not have evidence to make out a prima facie case.

**B.**   **Midland Files Affidavit of Kristine Drews**

118.   Kristine Drews is an employee of Midland Credit.

16

119. Kristine Drews' acts, as alleged in this complaint, were done under the direction and control of The Encore Defendants.

120. All acts done by Kristine Drews were done on behalf of The Encore Defendants.

121. On June 1, 2010, an employee of Midland Credit, other than Kristine Drews, generated through a computer system using a form affidavit ("The Drews Affidavit") regarding the alleged indebtedness of Plaintiff Tellefsen.

122. On June 1, 2010, Kristine Drews signed the affidavit to be used in collecting the alleged debt allegedly owed to The Encore Defendants.

123. On August 11, 2009, United States District Court Judge David Katz of the Northern District of Ohio determined the Midland Credit "Form 400" as used by the Defendants to be "patently false" in an Order on Summary Judgment entered by the court in Midland Funding, LLC v. Brent, 644 F.Supp. 2d 961 (2009).

124. The form affidavit of Kristine Drews filed in the Thomas Tellefsen Civil Court collection case is identical or substantially similar in form to the Ivan Jiminez "Form 400" affidavit determined to be patently false in the Brent case.

125. Ms. Kristine Drews personally signs *one hundred* to *four hundred* affidavits per day.

125. Attached as **Exhibit 4** is a true and correct copy of the Drews Affidavit filed with the Richmond County Civil Court in the Tellefsen State Action. It was submitted on or before June 30, 2010.

126. Aside from its false statements, it fails to specify for what its being used for. Presumably, it was submitted to obtain a default judgment, but the Encore Defendants keep the "Form 400" sufficiently vague so it can be used for any court in support of its claims. The Form does not

specify what state law it applies to, the court, any chain of custody, or any other necessary information to establish its authenticity or relevance.

127.   The Drews Affidavit purposefully omits a statement of the character of the debt. It alleges the claim is based on a revolving credit agreement; *or* 2) loans for goods and/or services and/or cash advances; *or* 3) authorized the use of a credit card account.

128.   The Encore Defendants knew, or should have known, that the Pressler firm would file this form on their behalf.

129.   Ms. Kristine Andrews in her affidavit made the false, misleading, and deceptive statement that the affidavit was "based upon personal knowledge of those account records maintained on plaintiff's behalf."

130.   Ms. Kristine Drews did not have personal knowledge of the information in her affidavit regarding Mr. Tellefsen's alleged account.

131.   Ms. Drews falsely states that "[P]laintiff is the current owner of and/or successor to, the obligation sued upon, and was assigned all the rights, title and interest to defendant's CITIBANK account 54241805667 (MCM Number 8530956628). Mr. Tellefsen never had this account.

132.   Ms. Kristine Drews in her affidavit made the false, misleading, and deceptive statement that "I have access to and have reviewed the records pertaining to the account and am authorized to make this affidavit on plaintiff's behalf."

133.   Ms. Drews had no knowledge or access to any "records" relating to Mr. Tellefsen.

134.   Ms. Kristine Drews in her Affidavit made the false, misleading, and deceptive statement that "I am familiar with the manner and method by which MCM creates and maintains its business records pertaining to this account."

18

135.    Ms. Drews has no familiarity with any such "business records" or any manner in which they were created.

136.    There were no "business records" relating to Mr. Tellefsen. A media sheet was transferred electronically between the defendants.

137.    Ms. Drews was not familiar with the regular course of business of Encore.

138.    Ms. Drews' title of "Legal Specialist" is false misleading, and deceptive because it implies Ms. Drews is an attorney or familiar with the law.

139.    Ms. Drews has no legal training. She is incompetent to analyze and attest to the admissibility of the alleged evidence to which she refers.

140.    Ms. Kristine Drews' attempt to create a business record exception to hearsay is false, misleading and deceptive because she has no personal knowledge of *any records*.

141.    Ms. Drews asserts that "the account shows that the defendant(s) owed a just and true balance of $2180.21 as of 2009-12" is false, misleading and deceptive because it is not true.

142.    Ms. Drews claims "I am advised that interest is due from 2009-12-06 accrued at a rate of 9.000% as an annual percentage rate, amounting to $23.12, making the total due and owing of $2203.33."

143.    Ms. Kristen Drews did not possess any reliable evidence as to the interest rate, or whether any debt entitled Midland Credit to collect upon it.

144.    Ms. Kristen Drews did not review any reliable, relevant records prior to signing the affidavit and did not know whether or not there even existed a final statement of account or what information it might contain.

145.    When the Drews affidavit was sent to Pressler, no records were attached.

146.     On or before June 30, 2010, Midland Credit and the Encore Defendants authorized

Pressler to file the Kristen Drews Affidavit to obtain a default judgment against Mr. Tellefsen in

the State Action.

### C.     Pressler Files False "Affirmation of Account Purchase"

147.     Michael E. Zipkin, Esq. swore under the penalty of perjury"

> 1.     Upon review of the information provided by MIDLAND FUNDING LLC DBA
> IN NEW YORK AS MIDLAND FUNDING OF DELEWARE LLC at the time
> the subject account was placed with my office, the instant CITIBANK account,
> under account number 5424180566711013, was purchased and acquired by the
> Plaintiff on May 28, 2009.

148.     This affirmation is false, misleading, deceptive, and deceitful, because said account did

not belong to Mr. Tellefsen.

149.     Mr. Zipkin falsely represented that he meaningfully reviewed and made reasonable

inquiry as to the truthfulness of this affidavit.

150.     Mr. Zipkin did not review any information provided by Midland that could lead him to

conclude that this alleged CITIBANK account belonged to Mr. Tellefsen and that it was

"purchased and acquired by the Plaintiff on May 28, 2009."

151.     The defendants surreptitiously obtained the default judgment against Mr. Tellefsen on or

around June 17, 2010 for $2,438.43.

152.     Mr. Tellefsen first learned of this lawsuit when his bank, Municipal Credit Union, by

letter dated February 17, 2011 notified him that his bank account was restrained.

153.     Mr. Tellefsen never received a summons and complaint, notice of application and entry

of judgment, or notice of any bank restraints.

154.     Defendants knowingly executed upon a writ of execution without notice to Mr. Tellefsen.

155.   Mr. Tellefsen was shocked and immediately called Pressler to explain that the alleged Citibank account never belonged to him. Mr. Tellefsen begged Pressler to release the account on the grounds that it was premised on a debt that did not exist, and that he was not notified.

156.   Despite being placed on notice of Mr. Tellefsen's objections -- that defendants sued the wrong man – Pressler sought to exploit his duress by forcing him into entering into unfair payment plan. Pressler did not have a shred a proof to refute Mr. Tellefsen's objection that the account was not his.  Pressler stated to Mr. Tellefsen, "it doesn't matter, we have a judgment," in response to his supplication that the account did not belong to him.

157.   On February 18, 2011, Mr. Tellefsen filed and served a *pro se* order to show cause to vacate the judgment based primarily on the grounds that he never received notice of the lawsuit.

158.   Despite the fact that defendants had already sued Mr. Tellefsen and had seized his assets, Midland Credit sent him a dunning letter dated February 22, 2011 **(Exhibit 5)**. The letter is deceptively titled "Notice of New Ownership and Pre-legal Review." This letter misrepresents the original account number, the previous balance, the interest rate, and the current balance. This letter attempts to collect on a criminally usurious interest rate of 29%.

159.   In response to Mr. Tellefsen's motion to vacate, Pressler submitted frivolous opposition papers containing numerous falsities:

- Pressler did not mail to Mr. Tellefsen a summons and complaint as alleged in ¶ 8 in its opposition.

- Pressler did not mail to Mr. Tellefsen a "judgment notice" by letter dated July 14, 2010 as alleged in ¶ 9 of its opposition.

- Pressler did not mail to Mr. Tellefsen the "notices" as alleged in ¶ 10 in its opposition.

- Pressler blindly categorized Mr. Tellefsen's lack-of-notice defense as one lacking merit.

21

160.    Mr. Tellefsen retained his current counsel on March 8, 2011. Counsel faxed to Pressler a letter (**Exhibit 4**) emphasizing the falsified affidavit of service and clearly specifying that Pressler sued the wrong man.

161.    Later on March 8, 2011, counsel e-mailed Mr. Stiller of Pressler & Pressler color photographs (**Exhibit 3**) that contradict Magarik's false description of the house.

162.    Despite being aware that they had sued the wrong man and secured a default judgment based on fraudulent service, Pressler insisted on proceeding to the motion hearing on March 9, 2011. On that day, Mr. Tellefsen and counsel appeared with additional color copies of the house.

163.    By Order dated March 9, 2011, Judge Philip Straniere vacated the restraining notice and permitted Mr. Tellefsen to interpose an answer.

164.    Despite counsel's Notice of Representation, sent directly to Midland's counsel on March 8, 2011, Midland continued its campaign of harassment against Mr. Tellefsen and his relatives.

165.    On March 14, 2011, Midland Credit called Mr. Tellefsen's home at least five times and hung up.

166.    On March 15, 2011, Midland Credit called at least a half dozen times, many times hanging up on Ms. LaPlant.

167.    On March 15, 2011, Carmen Martinez of Midland Credit called the Tellefsen residence and communicated the specifics of the alleged debt to Michele LaPlant, a third party. Although Carmen Martinez knew that Michele LaPlant was a third-party not responsible for the debt, Ms. Martinez nevertheless persisted in pressuring Ms. LaPlant to pay the debt herself. During this same call, Ms. LaPlant informed Ms. Martinez that both she and Mr. Tellefsen had retained counsel to represent them against Midland's collection attempts. Midland nevertheless continued to willfully violate the FDCPA by calling again the next day, March 16, 2011.

168.     On or about March 15, 2011, Mr. Tellefsen's counsel filed a motion to dismiss for lack of jurisdiction in light of the fraudulent service described above.

**D.     Pressler Affirms Fraudulent Affidavit of Service**

169.     Attorney Mitchell Zipkin, through his affirmation dated March 22, 2011 **(Exhibit 6)** persisted in further deceiving the court by advancing bizarre explanations for the clear falsities of the affidavit of service.

170.     Completely undermining the importance of truthful service, Zipkin advanced disingenuous, illogical and deceptive explanations for Magarik's untruths. For example, Zipkin argues that the process server's description was from the perspective of looking "out" the door.

171.     Zipkin disingenuously argued that white trim surrounding the door could explain Magarik's factual assertion that the house was white – not vivid blue.  That argument is, in a word, ridiculous.  **(Exhibit 3)**.

172.     Magarik did not describe the location of the door and the driveway by looking "out" of the door as if he were standing inside the home, or with his back turned toward the house. It is ubiquitously understood in the legal profession that process servers describe homes by looking "at" them.

173.     Attorney Zipkin attenuated the affidavit's falsities by ascribing them with "little importance as it is a matter of semantics." **(Exhibit 6; ¶ 11)**. Critical facts in a sworn affidavit of those facts is hardly a "matter of semantics."

174.     Zipkin's affidavit eludes facts and relies on previous attorneys' misrepresentations. Zipkin falsely swore that he is fully familiar with the facts and circumstances in this case.

175.     On the return date of the March 28, 2011 motion to vacate, Justice Straniere set the matter down for a traverse hearing to occur on May 2, 2011.

176.   Magarik failed to appear to testify under oath at that hearing despite his professional obligation to affirm the truthfulness of his affidavit.

177.   As a matter of routine practice, Pressler and their process servers simply discontinue their cases when service is seriously challenged. Pressler knew that that service on Mr. Tellefsen was predicated on fraud, especially when presented with clear evidence.

178.   At the scheduled traverse hearing for May 2, 2011, Magarik failed to appear and affirm the facts of his affidavit of service. Said failure amounts to a willful noncompliance of his obligations and duties.

179.   Midland Credit continues to harass Mr. Tellefsen with its false, misleading, and deceptive letters. Mr. Tellefsen received another letter dated March 15, 2011 (**Exhibit 7**). Again, this is after the defendants were put on notice of Mr. Tellefsen's representation by counsel, and after the alleged debt was reduced to judgment.

180.   Without consent and using fraud upon the court, defendants trespassed and wrongfully exercised dominion upon an unnoticed levy predicated on a debt not even belonging to Mr. Tellefsen.

181.   The equitable tolling doctrine applies to toll and preserve every claim asserted in this complaint. Through a fraudulent and reckless scheme, the defendants concealed from Mr. Tellefsen the existence of his causes of action by depriving him of his right to due process. The defendants purposefully kept the plaintiffs in ignorance of their causes of action until on or around February 17, 2011, the day he became aware that his bank account was restrained.

182.   Mr. Tellefsen's ignorance of his causes of action were not attributable to a lack of diligence on his part because he was deceived through sewer service and subsequent notices that were either not sent – or purposefully sent to his parents' address.

## VI. MR. TELLEFSEN SUFFERS EXTREME ACTUAL DAMAGES

183.     Mr. Tellefsen and his family suffered the precise damages for which the FDCPA and tort

law were created to remedy against.

### A.     Credit Damage and Financial Harm

**TransUnion**

Civil Court Judgment by Midland Funding, LLC for $2,180 filed on 6/10.

Adverse Collection Account by Midland Credit MGMT, INC for past due amount of $2,501;
placed for collection 05/09; Original Creditor Citibank

Account Review Inquiry by Midland Credit MGMT, Inc., requested on 01/11; Permissible
Purpose: Collection.

**Experian**

Civil Court Judgment by Midland Funding, LLC for $2,180 filed on 6/10.

Adverse Collection Account by Midland Credit MGMT, INC for past due amount of $2,501;
placed for collection 05/09; Original Creditor Citibank; reported since 7/09 for nearly two years.
Pressler began requesting and sharing inquiries since 12/10/09 scheduled to continue on record
until January 2012.

**Equifax**

Civil Court Judgment by Midland Funding, LLC for $2,180 filed on 6/10.

Adverse, closed account by Midland Credit Management reflecting an open date May 2009 with
a past due amount of $2501 with a first delinquency date of November of 2007. No original
creditor is listed.

Adverse collection account by Midland Credit Management reflecting an open date May 2009 of
a past due amount of $2501 alleging a first delinquency date of November of 2007. No original
creditor is listed.

184.     The above adverse trade lines, derogatory marks, and judgments have seriously harmed

Mr. Tellefsen's credit worthiness, credit reputation, and credit expectancy.  These marks remain

on Mr. Tellefsen's credit reports to this day.

185.   The defendants have hurt Mr. Tellefsen's access to credit.

186.   The defendants have injured Mr. Tellefsen's business relationships with past, present and future credit grantors.

187.   The defendants have damaged Mr. Tellefsen's financial reputation.

188.   Mr. Tellefsen has suffered interest hikes, interest rate differentials, fees, credit denial(s), a significant drop in credit score, and loss of credit expectancy.

189.   Mr. Tellefsen's bank account was restrained. This deprived him of access to the only source of money he had to feed his family and pay his bills. Several checks were bounced, including the renewal fee to his son's Boy Scouts; his subscription to AccuWeather Pro, which he needs for work; and Netflix.

190.   Mr. Tellefsen suffered bounced check fees and "legal processing fees" imposed by his bank for handling the restraining notice. Mr. Tellefsen's financial reputation, credit worthiness, and business relationship with his bank has hurt him financially, and will continue to hurt him financially in the future.

191.   Further consequential damage flowing from his frozen bank account include late bill payments, including insurance and cable, that caused him penalty fees.

192.   Mr. Tellefsen was forced to incur counsel fees. His counsel had to intervene immediately to vacate the judgment, answer, then move to dismiss. Mr. Tellefsen incurred costs for his attorney to prepare for and appear at a traverse hearing, costs which would not have been necessary but for the abusive and bullying litigation practices of the defendants.

193.   Mr. Tellefsen suffered out-of-pocket losses. He has spent several hundred dollars in missed time from work, copying charges, parking charges, and gas.

**B.      Injury to Family and Work Relationships**

194.    Ms. LaPlant – who is Mr. Tellefsen's domestic partner and mother of his son – was

contacted and harassed by Carmen Martinez of Midland Credit. This harassment added direct

stress to their domestic relationship.

195.    Ms. LaPlant suffered emotional and physical injuries which were compounded by the

injuries inflicted to Mr. Tellefsen. Fear, uncertainty, and doubt are integral to the collection

terrorism campaign of the defendants. The least sophisticated consumer can be lead to believe

they owe a debt when they do not. The defendants are skillful at extracting money from

consumers without foundation and under false pretenses. The defendants are skillful at applying

pressure to friends, relatives, and other third parties to inflict negative feelings like humiliation

and embarrassment in order to compel debtors to pay debt. Spouses and domestic partners are

targeted to help carry out this collection misconduct.

196.    As a result of the defendants' harassment, Ms. LaPlant suffered sleep deprivation,

anxiety, nervousness, fear, worry, embarrassment, humiliation, intimidation, and instability.

197.    Congress stated in its congressional declaration to the FDCPA that "abusive debt

collection practices contribute to the number of personal bankruptcies, to marital instability, to

the loss of jobs, and to the invasions of individual privacy."

198.    Due to the marital strain, tension, instability, acrimony, hostility, and fear caused by this

acute financial threat, Mr. Tellefsen was forced to disclose his financial circumstances to his

parents and co-workers from whom he needed to borrow thousands of dollars.

199.    Mr. Tellefsen's individual privacy rights were trampled on when the defendants trashed

his credit reports without a permissible purpose. This entire ordeal culminated in a cascade of

embarrassing disclosures to family members, co-workers, his employer, creditors, and credit

bureaus.

## C.   Mr. Tellefsen Suffers Physical Injuries

200.   The defendants' misconduct inflicted serious shock to his nervous system.  Mr. Tellefsen

suffered mental anguish; confusion; sleep deprivation; stomach pains; anxiety; nervousness;

headaches; fear; worry; embarrassment; humiliation; intimidation; lost concentration at work;

instability at work; acrimony and hostility in his marriage; loss of appetite; emotional distress;

worry and loss of happiness; irritability; loss of tranquility; indignation; high blood pressure;

constipation; and loss of weight.

201.   Mr. Tellefsen sought the medical attention of a board certified internist for relief from all

these consequential, physical manifestations stemming from the defendants' conduct. He was

prescribed medication and continues to take it.

## VII.   FIRST CLAIM FOR RELIEF AGAINST ENCORE, MIDLAND, PRESSLER, MAGARIK, AND ACCURATE
### (Violations of the FDCPA)

202.   The plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.

203.   The defendants repeatedly violated the FDCPA.  The violations include, but are not

limited to, the following:

(a)   Attempting to collect, collecting, and enforcing upon, the alleged debt without

express authority by agreement or law in violation of §§1692(f), 1692f(1), 1692d, 1692e,

1692e(2)(a) and (b), 1692e(5), and 1692e(10).

(b)   Misrepresenting Midland Funding's legal authority to bring and maintain this

action in violation of §§1692(f), 1692f(1), 1692d, 1692e, 1692e(2)(a) and (b), 1692e(5), and

1692e(10).

(c)   Filing pleadings containing false statements as alleged herein in violation of

§§1692(f), 1692f(1), 1692d, 1692e, 1692e(2)(a) and (b), 1692e(5), and 1692e(10).

(d)      Filing affidavits containing false statements as alleged herein in violation of §§1692(f), 1692f(1), 1692d, 1692e, 1692e(2)(a) and (b), 1692e(5), and 1692e(10).

(e)      Repeatedly furnishing false, contradictory, and inconsistent information to the credit reporting agencies in violation of §§1692e(8) and 1692e(10).

(f)      Filing pleadings and affidavits in the state action that contradict and conflict with the information furnished to the credit reporting agencies and as represented in their dunning letters in violation of §§1692(f), 1692f(1), 1692d, 1692e, 1692e(2)(a) and (b), 1692e(5), 1692e(8), and 1692e(10).

(g)      In March 2011, repeatedly calling, speaking to, and harassing Ms. LaPlant while misrepresenting the character, status, and legal amount of the alleged debt in violation of §§1692e, 1692b, 1692e(10), 1692c, 1692d, 1692d(5), and 1692f.

(h)      In March 2011, repeatedly calling the residence and hanging up – before and after somebody answered – for the sole purpose of harassing, annoying, and scaring the plaintiffs in violation §§1692d, 1692d(5), 1692d(6), and 1692c.

(i)      In March 2011, when speaking to Ms. LaPlant, deceptively creating the impression that the she was also responsible for the alleged debt in violation of §§1692b, 1692c, 1692c(a), 1692c(b), 1692e, 1692e(10), 1692d, 1692d(5), 1692d(6) and 1692f.

(j)      In purposefully sending Midland Credit's dunning letter February 22, 2011 (**Exhibit 6**) to Mr. Tellefsen's parents' home – especially when defendants were aware of Mr. Tellefsen's current address – in violation of §§1692b, 1692c, 1692c(a), 1692c(b), 1692e, 1692e(8), 1692e(10), 1692d, 1692d(5), and 1692f.

(k)     Characterizing its post-judgment collection letter of February 22, 2011 as "Pre-legal Review" thus misrepresenting the character and legal status of the alleged debt in violation of §§1692e, 1692e(2)(a), 1692e(8), 1692e(10), 1692d, and 1692f.

(l)     Attempting to collect $1,767.43 and $1,798.29 by letters dated February 22, 2011 and March 15, 2011, respectively. Then sending a letter dated February 23, 2011 attempting to collect the same debt through judgment enforcement for $2,397.30 was unfair, abusive, and deceptive. The least sophisticated consumer would infer that two or three separate debts exist. §§1692e, 1692e(2)(a), 1692e(5), 1692e(8), 1692e(10), 1692d, and 1692f.

(m)     Telling Mr. Tellefsen, "it doesn't matter, we have a judgment," in response to his immediate notification that the subject Citibank Account was not his, was deceptive, misleading, harassing, abusive, and oppressive in violation of §§1692e, 1692e(3), 1692e(5), 1692e(10), 1692d, and 1692f.

(n)     Attempting to collect two separate debts when defendants lacked the authority or legal right to collect on either, in violation of §§1692e, 1692e(2)(a) and (b), 1692e(10), 1692f, 1692f(1), and 1692d.

(o)     Providing Mr. Tellefsen a fraud affidavit when the defendants themselves acted fraudulently by knowingly collecting a bad debt in violation of §§1692e, 1692e(10), and 1692f.

(p)     Misrepresenting the original account number, the previous balance, the interest rate, the current balance in their dunning letters in violation of §§1692e, 1692e(2)(a), 1692e(10), 1692d.

(q)     Attempting to collect an interest rate of 29% when it was not expressly authorized by the agreement creating the debt or permitted by law in violation of §§1692e(2)(A), 1692f, and 1692f(1).

(r)     Attempting to collect an interest rate that is criminally usurious in violation of §§1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692d.

(s)     Attempting to collect accruing interest charges not expressly authorized by the agreement creating the debt or permitted by law in violation of §§1692e, 1692e(2)(A), 1692f and 1692f(1).

(t)     Calling, communicating with, and sending letters to Mr. Tellefsen and his relatives while he was represented by an attorney in violation of §§1692b, 1692c, 1692c(a), 1692c(a)(1), 1692c(a)(2), 1692c(b), 1692e, 1692e(10), 1692d, 1692d(5), 1692d(6) and 1692f.

(u)     Insisting on proceeding to a traverse hearing after being presented the photographs (**Exhibit 3**) in open court that flatly contradict the affidavit of service, conduct which shows a conscious disregard of the truth, the rules of evidence, and a breach of ethics. This conduct represents an ongoing pattern of the defendants' extreme legal delinquencies designed to oppress and abuse the rights of Mr. Tellefsen and others similarly situated in violation of §§1692e, 1692d, 1692d, and 1692f.

(v)     Restraining and executing upon Mr. Tellefsen's bank account by deceitfully securing a default judgment in violation of §§1692e, 1692e(2), 1692e(10), 1692d, 1692d, and 1692f.

(w)     Oppressively and unfairly exerting wrongful dominion over plaintiff's bank accounts and wages without authority, justification, or excuse in violation of §§1692f, 1692f(1), 1692f(6)(A) and (C), 1692d, 1692e, 1692e(5), and 1692e(10).

(x)     Suing Mr. Tellefsen through Midland Funding yet furnishing credit information by Midland Credit was and is deceptive to the least sophisticated consumer in violation of §§1692e, 1692e(8), and 1692e(10).

31

(y)     Filing sworn pleadings and affidavits without a factual basis and without conducting the minimum due diligence required under New York Law to avoid frivolous pleadings and affirmations in violation of §§1692(f), 1692f(1), 1692d, 1692e, 1692e(2)(A) and (B), 1692e(5), and 1692e(10).

(z)     Filing a complaint against Mr. Tellefsen that was deceptive and misleading in that it was signed by an attorney but not in fact meaningfully reviewed by an attorney, in violation of §§1692(f), 1692e, 1692e(3), and 1692e(10).

(aa)    Reporting false information to the credit reporting agencies in violation of §§1692e, 1692e(8), 1692e(10), and 1692d.

(bb)    Changing and furnishing different account numbers and trade-line information to the credit bureaus to make investigation and deletion impossible or difficult, in violation of §§1692e, 1692e(8), 1692e(10), 1692d, and 1692f.

(cc)    The defendants' acts and omissions alleged in this complaint, singularly and collectively, amount to unfair, unconscionable, and a deceptive means to collect a debt in violation of §§1692(f), 1692f(1), 1692f(6), 1692d, 1692e, 1692e(10).

204.    As the direct result of the defendants' FDCPA violations, the plaintiffs have suffered pecuniary and non-pecuniary damages.

205.    As a result of these violations, Mr. Tellefsen and Ms. LaPlant suffered actual damages, which include but are not limited to, those injuries set forth in paragraphs 183 through 201 in this complaint.

## VIII.   SECOND CLAIM FOR RELIEF AGAINST MIDLAND, ENCORE, AND PRESSLER
### (Violations of the FCRA)

206.    The plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.

207.    To protect consumers' privacy, the FCRA governs permissible uses and users of consumer credit reports. 15 U.S.C. §1681b(f) sets forth the purposes that govern both users' ability to obtain consumer reports and also their use of those reports once they have been released.

208.    Defendants Encore, Midland Credit, Midland Funding, and Pressler were/are users of Mr. Tellefsen's credit reports as they have obtained and used them directly and indirectly.

209.    Mr. Tellefsen never gave written instructions to the defendants to obtain and/or release to any third party any consumer report of which he was the subject.

210.    The defendants were never ordered by a court of competent jurisdiction to issue Mr. Tellefsen's consumer report pursuant to FCRA §1681b(1).

211.    The only arguable, applicable permissible uses of Mr. Tellefsen's credit report would be in connection with a "credit transaction" under §1681b(3)(A) or for a "legitimate business need" under §1681b(a)(3)(F)(i).

212.    Entering into a "credit transaction" is a condition precedent under §1681b(3)(A) in order to obtain consumer credit reports.

213.    A "credit transaction" was never entered into between the parties herein.

214.    The defendants knew, or should have known, that a credit transaction was never entered into between the parties or between any alleged predecessor-in-interest.

215.    Mr. Tellefsen never authorized any agency to provide his credit reports to any defendant.

216.    The defendants had no legitimate business need to obtain Mr. Tellefsen's credit reports.

217.    The defendants had no permissible purpose to obtain, use, and harm Mr. Tellefsen's credit reports.

33

218.   The defendants lacked the authority to certify that they had a permissible purpose to obtain and use Mr. Tellefsen's credit reports.

219.   Agency procedures exist to ensure that only Users with permissible purposes obtain credit reports.

220.   The defendants had an affirmative duty to follow reasonable procedures, including those that would prevent the impermissible accessing of Mr. Tellefsen's credit reports.

221.   Reasonable procedures for Users include restricting the ability of its agents to obtain consumer reports on consumers for any impermissible purpose.

222.   The defendants' illegal and surreptitious acquisition of Mr. Tellefsen's credit reports violated the letter and the spirit of the FCRA.

223.   The FCRA prohibits a User from obtaining or using a report unless the report was obtained of an authorized purpose that was certified in accordance with section 1681e, which requires the user to certify that the information will be used for no other purpose.

224.   The defendants as Users agreed and represented in its agreements with the credit reporting agencies that defendant Users would request and use consumer reports which were obtained from said agencies only for purposes that are lawful under the FCRA as defined under §1681b.

225.   At no time relevant to this complaint did Mr. Tellefsen ever have a relationship of any kind with any defendant who acted as a User as defined under § 1681b(3)(A)-(E).

226.   The Encore Defendants and Pressler falsely certified their purpose for obtaining Mr. Tellefsen's credit reports.

227.   The defendants promised through certification not to share Mr. Tellefsen's credit file to other persons who do not share a permissible purpose.

34

228.   The defendants knowingly and willfully used deception and false pretenses to obtain Mr. Tellefsen's credit report by falsely representing or certifying that the report was being obtained for a permissible purpose.

229.   The defendants' conduct in obtaining Mr. Tellefsen's credit report under false pretenses violates 15 U.S.C. 1681q.

229.   The defendants acted knowingly in requesting, obtaining, and using Mr. Tellefsen's credit reports without a permissible purpose in violation of 15 U.S.C. 1681b(f).

230.   The defendants acted willfully in requesting, obtaining, and using Mr. Tellefsen's credit reports without a permissible purpose in violation of 15 U.S.C. 1681b(f).

231.   The defendants acted knowingly in requesting, obtaining, and using Mr. Tellefsen's credit reports without a permissible purpose.

232.   The defendants obtained Mr. Tellefsen's credit reports by misrepresentation.

233.   The defendants were required, pursuant to FCRA §§ 1681q, 1681n and 1681o, to refrain from obtaining consumer reports from credit reporting agencies under false pretenses.

234.   Encore, Midland Funding, and Midland Credit impermissibly shared Mr. Tellefsen's credit file amongst each other.

235.   Encore, Midland Funding, and/or Midland Credit impermissibly shared Mr. Tellefsen's credit file with Pressler.

236.   The Encore Defendants and Pressler knowingly and willfully used Mr. Tellefsen's credit reports to a) locate outdated information; b) find information that they did not have permission to access; c) use information contained in them to fabricate and change account numbers of past debts to deceive the courts, the financial community, and Mr. Tellefsen; d) report false information to wrench compliance of a non-existent debt; e) impermissibly share with other parties who had no permissible purpose; and to f) harass, abuse, annoy, scare, and hurt Mr. Tellefsen.

237.   The defendants impermissibly used Mr. Tellefsen's credit report successively and repeatedly up to the present day.

35

238.    Although Mr. Tellefsen's credit reports show that the defendants began collecting on the alleged debt in May of 2009, he became aware of the credit report violations on or around February 17, 2011. Nevertheless, this suit is commenced within five years of FCRA based violations.

239.    The defendants give "blanket certifications" to credit reporting agencies to obtain hundreds of thousands – or millions – of consumer credit files.

240.    The defendants' business volume is no high that they cannot maintain procedures reasonably adapted to avoid targeting innocent third parties – such as Mr. Tellefsen – from harm and invasion of privacy.

241.    The defendants intentionally failed to maintain proper procedures to certify the permissibility of consumers' protected credit files.

242.    Pressler was not a "joint user" with a permissible purpose.

243.    The Encore defendants and Pressler intentionally deceived the credit reporting agencies to obtain Mr. Tellefsen's credit report.

244.    Midland Credit repeatedly violates the FCRA by furnishing false credit information.

245.    The Encore Defendants and Pressler impermissibly used Mr. Tellefsen's credit reports to wrench compliance to pay a debt that did not exist.

246.    The defendants have falsely, purposely, surreptitiously and maliciously obtained and used Mr. Tellefsen's credit reports in violation of FCRA §§ 1681q, 1681n, and 1681o.

247.    As a result of these violations, Mr. Tellefsen suffered actual damages, which include but are not limited to, those injuries set forth in paragraphs 183 through 201 in this complaint.

**A.    Punitive damages warranted under FCRA**

248.    The imposition of punitive damages are invoked under 15 U.S.C. § 1681n(a)(2). The willful failure of any person to comply with FCRA warrants punitive damages. Additionally,

punitive damages are expressly allowed for the willful violation of obtaining a consumer report under false pretenses or knowingly without a permissible purpose.

249. The defendants willfully violated §1681n(a)(2) when they used Mr. Tellefsen's credit report without a permissible purpose.

250. The defendants intentionally violated §1681n(a)(2) when they used Mr. Tellefsen's credit report without a permissible purpose.

251. Mr. Tellefsen is entitled to have his punitive damages claim heard by a jury. This case represents an ideal example to serve the extremely valuable, prophylactic purpose of deterring abuse of the credit reporting industry by the defendants.

252. The reprehensibility of the defendants' acts is enhanced because Mr. Tellefsen and his family suffered physical and financial harm caused from the defendants' misconduct.

253. The defendants' business practices evince a general corporate wrongdoing.

## IX. THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Common law fraud and deceit)

254. The plaintiffs repeat, reallege and incorporate by reference the foregoing paragraphs.

255. The elements of a fraud-and-deceit cause of action are 1) representation of an existing material fact; 2) falsity; 3) *scienter*, 4) deception; and 5) injury.

256. New York State recognizes a fraud-and-deceit theory in connection with using the court system to knowingly file falsified affidavits to secure default judgments.

257. The defendants used false representations in pleadings, the affidavit of service, and affidavits/affirmations, as set forth in this complaint.

258. The defendants knew those representations were false.

259. The defendants made the false representations recklessly without regard to whether they were true or false.

260.    The defendants made the false representations for the purpose of inducing the court to believe that Mr. Tellefsen was properly served.

261.    The defendants made the false representations for the purpose of inducing the court to rely on the fact that Mr. Tellefsen had defaulted, and that defendants' were entitled to a default judgment against him.

262.    The defendants made the false representations for the purpose of inducing the court to rely on the amount alleged, when in fact Mr. Tellefsen owed no such debt.

263.    The defendants made the false representations for the purpose of inducing Mr. Tellefsen into paying an alleged debt.

264.    The defendants made the false representations for the purpose of inducing the credit reporting agencies to report the phony debt.

265.    The court justifiably relied on the defendants' false representations when it issued a default judgment against Mr. Tellefsen.

266.    The credit reporting agencies justifiably relied on the defendants' false representations when they reported, and continue to report, the false debt to the financial community thereby damaging Mr. Tellefesen's financial reputation and access to credit.

267.    Mr. Tellefsen justifiably relied on the defendants' false representations by refraining from answering the complaint or contesting the entry of the judgment. Neither privity – nor a relationship, which is the functional equivalent of privity – is an element of common law fraud. The false statements need not have been made directly to Mr. Tellefsen since he was the person who was intended to act – or *not act* – upon them.

38

268.    As a result of the defendants' fraud and deceit, Mr. Tellefsen and Ms. LaPlant suffered actual damages, which include but are not limited to, those injuries set forth in paragraphs 183 through 201 in this complaint.

## X.  FOURTH CLAIM FOR RELIEF AGAINST MAGARIK AND ACCURATE
### (Violation of NYC Admin. Code § 20-403, et seq.)

269.    The plaintiffs repeat, reallege and incorporate by reference the foregoing paragraphs.

270.    Title 20, subchapter 23 of the New York City Administrative Code governs licensing and regulates the conduct of process servers in the City of New York.

271.    The deliberate failure by some process servers to deliver summons' followed by false affidavits alleging successful delivery has been described "as a rising problem" in New York City. In response, the New York City Council, in 2010, enacted legislation with new, stringent regulations for service of process in an effort to directly protect consumers from "sewer service."

272.    A violation of this statute implicates a violation of the constitutional right of due process thereby empowering this federal court to exercise subject matter jurisdiction over this claim independent of supplemental jurisdiction.

273.    Among the requirements of this code, process servers and process serving agencies are required to obtain surety bonds to guaranty compliance with this code; log all service attempts into an electronic system; provide a statement of employee rights and employer responsibilities to every process server under their employ; keep for three years a statement signed by each employee indicating that the employee read and understood the statement of rights and obligations; obtain a license and pass an examination; and maintain records and electronic service logs for seven years. Further, process servers are prohibited from falsifying sworn affidavits for use in court proceedings.

274.   Defendant Magarik is a "process server" as defined by NYC Admin. Code § 20-404, and at all relevant times was required to comply subchapter 23 of the NYC Admin. Code.

275.   Defendant Accurate is a "process serving agency" as defined by NYC Admin. Code § 20-404, and at all relevant times was required to comply subchapter 23 of the NYC Admin. Code.

276.   Defendant Accurate distributed or assigned process for service to Magarik, and did so in this case, for the purpose of preparing an affidavit of service to be filed in Richmond Civil Court, a court of competent jurisdiction.

277.   Defendant Accurate is responsible for the acts and omissions of Magarik under subchapter 23 of the NYC Admin. Code as well as under the common law doctrine of *respondent superior* and the law of agency.

278.   The acts and omissions of Accurate and Magarik as alleged in this complaint demonstrate an intentional and willful non-compliance of subchapter 23 of the NYC Admin. Code.

279.   Magarik willfully failed to serve process.

280.   Magarik intentionally failed to serve process then created a sworn affidavit used to deceive the court and commit fraud upon the court.

281.   Magarik and Accurate continued to violate this code by affirmatively litigating and advancing this bogus affidavit, which furthered needless service litigation.

282.   Magarik and Accurate willfully failed to comply with their process serving obligations and duties by failing to appear and testify at the court ordered traverse hearing.

283.   As a result of these violations of subchapter 23 of the NYC Admin. Code, Mr. Tellefsen is entitled to compensatory damages (as alleged herein, including paragraphs 183 through 201) and punitive damages for the defendants' willful failure to serve process, falsifying the sworn

40

affidavit, then ignoring the traverse hearing, injunctive and declaratory relief, attorneys' fees and costs, and such other relief as this court deems appropriate pursuant to NYC Admin. Code § 20-409.2.

## XI. FIFTH CLAIM FOR RELIEF AGAINST ENCORE, MIDLAND, AND PRESSLER
### (Trespass to Chattels)

284.    The plaintiffs repeat, reallege and incorporate by reference the foregoing paragraphs.

285.    The defendants, without justification or consent, intentionally restrained Mr. Tellefsen's bank account.

286.    Said bank restraint physically interfered with Mr. Tellefsen's right to access, possess, and use his money.

287.    As a result of the defendants' intentional interference with Mr. Tellefsen's bank account, Mr. Tellefsen suffered significant harm as set forth in this complaint.

288.    Mr. Tellefsen made a reasonable demand for the surrender of this property.

289.    The defendants refused to lift the restraint on Mr. Tellefsen's property notwithstanding his demand.

290.    The defendants have exercised dominion and control over Mr. Tellefsen's property for an unreasonably long period of time especially in light of their wrongful taking.

291.    The defendants intended to interfere with Mr. Tellefsen's access and use of his money, and were substantially certain that his damages would occur as a result of said interference.

292.    Mr. Tellefsen had a constitutionally protected property right for which he was entitled to notice when that right was about to be infringed. The defendants repeatedly deprived Mr. Tellefsen of such rights.

293.    The state court judgment was null and void for, *inter alia*, lack of personal jurisdiction and lack of subject matter jurisdiction.

294.     The void service of process, and resultant judgment, provided no justification to the
defendants who became converters *ab initio* and liable for the consequences of their acts as if the
judgment and execution never existed.

295.     As a result of these violations, Mr. Tellefsen and Ms. LaPlant suffered actual damages,
which include but are not limited to, those injuries set forth in paragraphs 183 through 201 in this
complaint.

## XII.   SIXTH CLAIM FOR RELIEF AGAINST ENCORE, MIDLAND, AND PRESSLER
### (Conversion)

296.     The plaintiffs repeat, reallege and incorporate by reference the foregoing paragraphs.

297.     The defendants – without authority, excuse, or justification – intentionally exercised
control over Mr. Tellefsen's bank account through the use of a fraudulently obtained default
judgment.

298.     Mr. Tellefsen – not the defendants – had full property interests in his bank account and
all the contents therein.

299.     The defendants intentionally interfered with Mr. Tellefsen's possessory rights, use and
enjoyment of said bank account through their unauthorized restraint.

300.     The state court judgment was null and void for *inter alia* lack of personal jurisdiction and
lack of subject matter jurisdiction.

301.     The void service of process, and resultant judgment, provided no justification to the
defendants who became converters *ab initio* and liable for the consequences of their acts as if the
judgment and execution never existed.

302.     As a result of these violations, Mr. Tellefsen and Ms. LaPlant suffered actual damages,
which include but are not limited to, those injuries set forth in paragraphs 183 through 201 in this
complaint.

## XIII.   SEVENTH CLAIM FOR RELIEF AGAINST ALL ENCORE, MIDLAND FUNDING, MIDLAND CREDIT, AND PRESSLER
### (Negligence)

303.   The plaintiffs repeat, reallege and incorporate by reference the foregoing paragraphs.

304.   The defendants are in the business of attempting to collect debts. They ultimately make a public record of the outcome of their work and it is expected that this information will be used in legal pleadings, affidavits, judgments and be given credit reporting agencies, debt collectors, marshals, and sheriffs who can and do cause significant and foreseeable harm.

305.   The defendants had the duty to take reasonable care to ensure that their collection efforts were/are directed at the correct person. The defendants owed Mr. Tellefsen the duty to take reasonable care to ensure that he was a proper party. The defendants owed Mr. Tellefsen the duty to ensure that he owed the debt as alleged in their pleadings, in their affidavits, in their correspondence, and in their communications to the credit reporting agencies. The defendants owed Mr. Tellefsen the duty to take reasonable care to ensure that he was properly served with due process. The defendants owed Mr. Tellefsen the duty to take reasonable steps to avoid converting, trespassing, interfering with, and exercising dominion over his assets unlawfully. The defendants owed Mr. Tellefsen the duty to undertake a reasonable investigation to confirm or rule out whether or not they sued the right person for the right amount, especially when presented with legitimate and lawful objections. The defendants owed Mr. Tellefsen the duty to release his assets and discontinue litigation against him when presented with unequivocal, exculpatory evidence. The defendants had the duty to maintain procedures reasonably adapted to avoid targeting and suing the limited group of Thomas Tellefsens who either a) do not owe the alleged debts; b) owe different amounts of alleged debts; or c) owed debts to other creditors.

306.    The defendants breached each of the foregoing duties through utter carelessness, recklessness, disregard of the law, and through a failure to maintain reasonable procedures and policies to avoid the foregoing negligent acts and omissions.

307.    The defendants breached numerous statutorily imposed duties of the FDCPA as set forth above. Said breaches constitute negligence *per se* or serve as further evidence of negligence.

308.    The defendants' negligent acts and omissions were a substantial factor in causing Mr. Tellefsen's injuries, which include those alleged in paragraphs 183 through 201 in this complaint.

## XIV.  EIGHTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Gross Negligence/Willful Misconduct)

309.    The plaintiffs repeat, reallege and incorporate by reference the foregoing paragraphs.

310.    The defendants' conduct rises to the level of gross negligence and willful misconduct because of the repeated, high volume, intentional, reckless, and fraudulent nature of the collusive scheme between all defendants to deceive the courts, the public, and the credit reporting agencies.

311.    The defendants have no legal defense to knowingly filing false, frivolous pleadings, affidavits, judgments, and executions that were used to deprive Mr. Tellefsen of procedural due process. The defendants knowingly and/or recklessly filed the falsified Magarik affidavit, the falsified Drews affidavit, the falsified pleadings, the falsified affidavit in support of the default judgment, and the falsified affidavit in opposition to Mr. Mr. Tellefsen's motion to vacate the judgment.

312.    The defendants purposefully did not serve Mr. Tellefsen with any papers – at any stage – as required to notify him of the proceedings so as to deprive him of presenting any kind of defense.

313.    In litigation, including the litigation in the state action, Pressler alleges that notification

letters were sent to consumer debtors when they were not. Only when challenged, Pressler

produces *unsigned* letters to support a claim that said letters were sent – when they were not.

314.    The defendants repeatedly commence litigation proceedings when they never intend to

take the cases to trial or even present a prima facie case.

315.    The defendants purposefully employ process servers, like Magarik and Accurate, who

they know will engage in sewer service to further their collusive efforts to secure default

judgments to gain the maximum degree of leverage over vulnerable consumers. When Pressler

responds to challenges to their affidavits of service, it knowingly and recklessly advances

frivolous arguments giving bizarre explanations for the affidavits' falsities.

316.    The defendants intentionally commit these acts knowing that this conduct would

probably result in injury or damage. The defendants' scheme to defraud the public, the courts,

and Mr. Tellefsen amounts to a reckless indifference and a conscious disregard for the rights of

the consuming public.

317.    The defendants failed to use even slight care, and were so careless as to show complete

disregard for the rights and safety of others, including the rights and safety of Mr. Tellefsen, and

other persons with similarly spelled names and other identifying information, and the public at

large.

318.    The defendants' grossly negligent acts and omissions, and willful acts of misconduct,

were a substantial factor in causing Mr. Tellefsen's injuries, which include those alleged in

paragraphs 183 through 201 in this complaint.

### XV.   NINTH CLAIM FOR RELIEF AGAINST ENCORE, MIDLAND FUNDING, MIDLAND CREDIT, PRESSLER, AND ACCURATE
### (Negligent Training and Supervision)

45

319.   The plaintiffs repeat, reallege and incorporate by reference the foregoing paragraphs.

320.   Defendants Encore, Midland, Pressler and Accurate owed Plaintiffs a duty to train, and/or supervise its employees properly.

321.   The Encore Defendants, Pressler and Accurate owed Mr. Tellefsen the non-delegable duty to ensure that Mr. Tellefsen was the correct party and properly served.

322.   Accurate failed to properly train and supervise Magarik with regard to the legal duties of process servers.

323.   Pressler failed to properly train and supervise Magarik with regard to the legal duties of process servers.

324.   Pressler failed to properly train and supervise over the acts of Accurate with regard to the legal duties of process servers.

325.   The defendants' actions and omissions constitute negligence in that defendants owed plaintiffs a duty to train, and/or supervise its employees and agents properly.

326.   The defendants' breaches demonstrated a want of scant care and a grossly negligent and/or reckless indifference to the rights of Mr. Tellefsen and the public generally.

327.   The defendants' breaches were an extreme departure from ordinary care.

328.   The defendants' breaches of those duties were the proximate cause of damages suffered by Mr. Tellefsen as alleged in paragraphs 183 through 201 of the complaint.

### XVI.   TENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Violation of NYGBL § 349)

329.   The plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.

330.   NYGBL § 349 declares unlawful deceptive acts or practices in the conduct of any business, trade or commerce, or in the furnishing of any service in this state.

46

331. The conduct complained of occurred during, and in furtherance of, the defendants' for-profit business enterprise of pursuing consumers for alleged defaulted debt obligations.

332. At all times material to this complaint, the defendants' deceptive acts and practices that gave rise to the claims herein occurred while the defendants conducted their business of collecting consumer debts.

333. The defendants' acts and practices have been directed entirely at consumers, and their acts and practices have broad impact on the New York consuming public.

334. The defendants' collection acts and practices are part of a recurring practice against large numbers of consumers in furtherance of its business model of increasing debt volume while decreasing the cost of each case, thus enhancing profitability.

335. The defendants' offending collection practices have the capacity and tendency to deceive and mislead a significant percentage of consumers in a material way because they deprive consumers of federally guaranteed rights. These acts contribute to an increasing number of personal bankruptcies, divorces, and job losses, which are all significant social concerns that applicable federal and state consumer protection laws were designed to prevent.

336. The defendants' deceptive acts and practices violate NYGBL in the following ways without limitation: a) filing suit without ownership of any right to sue; b) certifying and filing frivolous pleadings and affidavits; c) making material misrepresentations in pleadings and affidavits; d) causing and conspiring to cause "sewer service" depriving Mr. Tellefsen of due process; e) fabricating letters during litigation purportedly sent but were not; f) collecting and attempting to collect money interest, and fees without authority by contract or law; g) securing a default judgment based on deceptive pleadings and affidavits; h) restraining and depriving Mr. Tellefsen of his assets after having deceived the court with phony affidavits and pleadings; i)

misrepresenting Midland Funding's authority to sue; j) misrepresenting Midland Funding's standing or capacity to sue; k) misrepresenting the character, nature, status, and amount of the debt; l) deceptively attempting to collect on two separate debts; m) knowingly and willfully commencing and maintaining a lawsuit without having an attorney meaningfully review the facts; n) repeatedly furnishing false, contradictory, and inconsistent information to the credit reporting agencies; o) attempting to deceive Ms. LaPlant into believing that she was responsible for the alleged debt; p) characterizing Midland Credit's February 22, 2011 as a "pre-legal review" when in fact Mr. Tellefsen had been sued; and q) providing Mr. Tellefsen a fraud affidavit when the defendants themselves were the fraudulent actors.

337.    The defendants' deceptive acts and practices are misleading in a material way because they are targeted at – and deceive – consumers at-large, the judiciary, banks, marshals, and sheriffs.

338.    A vast majority of the defendants' consumer credit lawsuits succeed by obtaining default judgments against unaware, uneducated and destitute consumers.

339.    As a result of these violations, Mr. Tellefsen and Ms. LaPlant suffered actual damages, which include but are not limited to, those injuries set forth in paragraphs 183 through 201 in this complaint.

340.    As a result of these violations of NYGBL § 349, the plaintiffs are entitled to an injunction barring defendants from engaging in deceptive acts and practices, and to recover actual damages, three times the actual damages up to $1,000, costs and reasonable attorneys' fees pursuant to NYGBL § 349(h).

## XVII.   PUNTIVE DAMAGES NECESSARY TO PUNISH DEFENDANTS AND DETER FUTURE BEHAVIOR

341.    The defendants' scheme to repeatedly misuse the legal system represents conduct that transgresses mere negligence – or even gross negligence – to reflect malicious, wanton, and reckless behavior, in complete disregard of the safety and rights of consumers nationwide.

342.    The knowing use of sewer service and phony affidavits to freeze the assets of consumers for profit is an insidious injustice. The conduct is especially wanton because it involves the deceit of the judiciary system, enforcement officers, and the financial industry, all of which cause devastating loss and grief to consumers and their families.

343.    The defendants' joint and impermissible use of credit reports to wrench payments not actually due is a national epidemic amongst debt buyers and collection lawyers. The Federal Trade Commission is simply unable to physically address the hundreds of thousands of complaints against debt collectors like the defendants.  Private consumer attorneys are viewed as "Private Attorney Generals" needed to enforce these consumer rights.

344.    The plain language of FDCPA § 1692n(c) permits and encourages enforcement of applicable state law claims that afford greater protection than the FDCPA.

345.    Punitive damages must be awarded to vindicate a public right and deter the defendants' continued immoral and illegal conduct.

346.    Unlawfully seizing the assets of innocent parties offends the right to due process. Doing it on such a mass scale for private, pecuniary gain is so dangerous to a fair marketplace that a clear message must be sent to the enterprises and the culpable lawyers that facilitate the illegal conduct.

347.    The defendants purposefully ignore legitimate evidence and procedural safeguards to maintain unlawful garnishments and executions. This scheme is carried out maliciously and done deliberately with the intent to interfere with consumers' desperately needed money.  The

defendants do this over and over. They derive hundreds of millions dollars in ill-gotten gains at a time of international crisis.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request the court grant the following relief:

a.    On the FIRST CLAIM FOR RELIEF under the FDCPA, a declaratory judgment that the defendants violated the FDCPA, actual damages, statutory damages, costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k;

b.    On the SECOND CLAIM FOR RELIEF under the FCRA

1.    pursuant to 15 U.S.C. § 1681n(a)(1)(A), award actual damages, or not less than $100 and not more than $1,000 for each impermissible access of his credit report, whichever is greater;

2.    pursuant to 15 U.S.C. § 1681n(a)(1)(B), award actual damages, or $1,000 for each access of his credit report obtained by false pretenses, whichever is greater;

3.    pursuant to 15 U.S.C. § 1681n(a)(2), award such punitive damages as the Court deems appropriate;

4.    pursuant to 15 U.S.C. § 1681n(a)(3), award costs of the action and reasonable attorney fees; and

5.    grant such other and further relief as the court deems just and proper.

c.    On the THIRD CLAIM FOR RELIEF for (COMMON LAW FRAUD AND DECEIT), actual damages, compensatory damages, and punitive damages as the defendants' actions and behavior were and are intentional, willful, deliberate, grossly wanton, reckless and demonstrate a high degree of moral culpability, are aimed at the public and harm the public interest.

d.    On the FOURTH CLAIM FOR RELIEF (NYC Admin. Code, Subchapter 23), a declaratory judgment that the defendants Accurate and Magarik violated this statute, actual damages, compensatory damages, attorneys' fees and costs, and punitive damages for the defendants' willful failure to serve process and appear at a court ordered traverse hearing,

injunctive and declaratory relief, attorneys' fees and costs, and such other relief as this court deems appropriate pursuant to NYC Admin. Code § 20-409.2.

e.     On the FIFTH CLAIM FOR RELIEF (Trespass to Chattels), actual damages, compensatory damages and punitive damages as the defendants' actions and behavior were and are intentional, willful, deliberate, grossly wanton, reckless and demonstrate a high degree of moral culpability, and are aimed at the public and harm the public interest.

f.     On the SIXTH CLAIM FOR RELIEF (Conversion), actual damages, compensatory damages and punitive damages as the defendants' actions and behavior were and are intentional, willful, deliberate, grossly wanton, reckless and demonstrate a high degree of moral culpability, are aimed at the public, and harm the public interest.

g.     On the SEVENTH CLAIM FOR RELIEF (Negligence), actual damages, compensatory damages, and punitive damages as the defendants' actions and behavior were and are intentional, willful, deliberate, grossly wanton, reckless and demonstrate a high degree of moral culpability, are aimed at the public and harm the public interest.

h.     On the EIGHTH CLAIM FOR RELIEF (Gross Negligence/Willful Misconduct) actual damages, compensatory damages, and punitive damages as the defendants' actions and behavior were and are intentional, willful, deliberate, grossly wanton, reckless and demonstrate a high degree of moral culpability, are aimed at the public and harm the public interest.

i.     On the NINTH CLAIM FOR RELIEF (Negligent Supervision), actual damages and punitive damages as the defendants' actions and behavior were and are intentional, willful, deliberate, grossly wanton, reckless and demonstrate a high degree of moral culpability, are aimed at the public and harm the public interest;

51

j.     On the TENTH CLAIM FOR RELIEF (NYGBL § 349), actual damages, three

times the actual damages up to $1,000, costs and reasonable attorneys' fees pursuant to NYGBL

§ 349(h); and for

k.     Such other and further relief as law or equity may provide.

Dated: New York, New York
       May 26, 2011

Jesse Langel (JL 7079)
The Langel Firm
*Counsel for Plaintiffs*
225 Broadway, Suite 700
New York, NY 10007
Tel: (646) 290-5600
Fax: (646) 964-6682
jesse@langellaw.com

52

CONSUMER CREDIT TRANSACTION

File T94268

**IMPORTANT!! YOU ARE BEING SUED!!**

THIS IS A COURT PAPER - A SUMMONS. DON'T THROW IT AWAY!! TALK TO A LAWYER RIGHT AWAY!! PART OF YOUR PAY CAN BE TAKEN FROM YOU (GARNISHEED) IF YOU DO NOT BRING THIS TO COURT, OR SEE A LAWYER, YOUR PROPERTY CAN BE TAKEN AND YOUR CREDIT RATING CAN BE HURT!! YOU MAY HAVE TO PAY OTHER COSTS TOO!! IF YOU CAN'T PAY FOR YOUR OWN LAWYER, BRING THESE PAPERS TO THIS COURT RIGHT AWAY. THE CLERK (PERSONAL APPEARANCE) WILL HELP YOU!!

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF RICHMOND
--------------------------------
MIDLAND FUNDING LLC DBA IN NEW
YORK AS MIDLAND FUNDING OF
DELAWARE LLC

               Plaintiff,       **Index No.**   002557

   -against-                   **SUMMONS**

THOMAS TELLEFSEN

                           Plaintiff's Residence Address
                           8875 AERO DRIVE SUITE 200
                           SAN DIEGO   CA   92123
          Defendant(s)      The Basis of this venue
                           designated is:
                           Defendant's residence

--------------------------------
Defendant's Residence Address:
    4998 AMBOY RD
    STATEN ISLAND, NY 103124834
To the above named defendant(s):

YOU ARE HEREBY SUMMONED to appear in the Civil Court of the City of New York , COUNTY OF RICHMOND , at the office of the clerk of the said Court at 927 CASTLETON AVE    in the COUNTY OF RICHMOND , City and State of New York within the time provided by law as noted below and to file your answer to the annexed complaint with the clerk; upon your failure to answer, judgment will be taken against you for the sum of $2,203.33 with interest on the sum of $2,203.33 from 01/18/10 together with the costs of this action.
Dated: 01/21/10

                  PRESSLER and PRESSLER, LLP
                    Attorneys for Plaintiff
           By:
                  Mitchell E. Zipkin , Esq.
                  305 Broadway 9th Floor
                  New York, NY 10007
                  (516) 222-7929

Note the law provides that:
a) If this summons is served by its delivery to you personally with the City of New York, you must appear and answer within TWENTY DAYS after such service; or
b) If this summons is served by its delivery to any person other than you personally, or is served outside the City of New York, or by publication, or by any means other than personal delivery to you within the City of New York, you are allowed THIRTY DAYS after the proof of service thereof is filed with the Clerk of this Court within which to appear and answer.

TRANSACCION DE CREDITO DEL CONSUMIDOR          File # T94268

!IMPORTANTE!  UD.  HA SIDO DEMANDADO!

ESTE ES UN DOCUMENTO LEGAL - - UNA CITACION

!NO LA BOTE! CONSULTE CON SU ABOGADO ENSEGUIDA! LE PUEDEN QUITAR
PARTE DE SU SALARIO (EMBARGARLO). SI UD. NO SE PRESENTA EN LA
CORTE CON ESTA CITACION LE PUEDEN CONFISCAR SUS BIENES
(PROPIEDAD) Y PERJUDICAR SU CREDITO! !TAMBIEN ES POSIBLE QUE
TENGA QUE PAGAR OTROS GASTOS LEGALES (COSTAS)! SI UD. NO TIENE
DINERO PARA UN ABOGADO TRAIGA ESTOS PAPELES A LA CORTE
IMMEDIATAMENTE. VENGA EN PERSONA Y EL SECRETARIO DE LA CORTE LE
AYUDARA.

CORTE CIVIL DE LA CIUDAD DE NUEVA YORK - CONDADO DE RICHMOND
---------------------------------
MIDLAND FUNDING LLC DBA IN NEW
YORK AS MIDLAND FUNDING OF
DELAWARE LLC

               Demandante,          **No. del Epigrafe.**
    -Vs.-                              **CITACION**
                                        La razon de haber designado esta

THOMAS TELLEFSEN                        Corte es:
                                        8875 AERO DRIVE SUITE 200
                                        SAN DIEGO  CA  92123
             Demandado(s)      La transaccion de credito tuvo
                                        lugar en el Condado de
                                        Residencia del Demandado
---------------------------------
Residencia del Demandado(s)
    4998 AMBOY RD
    STATEN ISLAND, NY 103124834
Al demandado(s) arriba mencionado(s):

USTED ESTA CITADO a comparacer en la Corte Civil de la Cuidad de Nueva
York, Condado de RICHMOND a la oficina del jefe Principal de dicha
Corte en 927 CASTLETON AVE  en el Condado de RICHMOND , Ciudad y Estado
de Nueva York, dentro del tiempo provisto por la ley segun lo indicado
abajo y a presentar su respuesta a la demanda al Jefe de la Corte;  si
usted no comparece a contestar, se rendira sentencia contra usted en la
suma de $2,203.33 con intereses sobre $2,203.33 en dicha cantidad desde
el dia de 01/18/10 , incluyendo las costas de esta causa.
Fechado, el dia de: 01/21/10      PRESSLER and PRESSLER, LLP
                                  Abogado(s) del Demandante
                          Por:
                                  Mitchell E. Zipkin , Esq.
                                  305 Broadway 9th Floor
                                  New York, NY 10007
                                  (516)222-7929

NOTA: La ley provee que:

(a) Si esta citacion es entregada a usted personalmente  en  la
Ciudad de Nueva York, usted debe comparecer y responder  dentro
de VEINTE dias despues de la entrega; o
(b) Si esta citacion es entregada a otra persona que  no  fuera
usted personalmente, o si fuera entregada afuera de la Ciudad de
Nueva York, o por medio de publicacion, o por otros medios  que

no fueran entrega personal a usted en la Ciudad de Nueva  York,
usted tiene TREINTA dias para comparecer y responder la demanda,
despues de haberse presentado prueba de entrega de la  citacion
al Jefe de esta Corte.

File # T94268

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF RICHMOND
----------------------------------
MIDLAND FUNDING LLC DBA IN NEW
YORK AS MIDLAND FUNDING OF
DELAWARE LLC

| | |
|---|---|
| Plaintiff(s) | **Index No.** |
| -against- | **COMPLAINT** |

THOMAS TELLEFSEN

Defendant(s)
----------------------------------

Plaintiff by its attorney, Pressler and Pressler, LLP complaining of the defendant(s) respectfully alleges upon information and belief as follows:

### FIRST CAUSE OF ACTION

1. Plaintiff, MIDLAND FUNDING LLC DBA IN NEW YORK AS MIDLAND FUNDING OF DELAWARE LLC, is a limited liability company formed under the laws of the state of DE and having taken assignment of is owner of CITIBANK account number 5424180566711013 and is a debt collection agency licensed by the New York City Department of Consumer Affairs license No. 1312658 and is authorized to do business in the State of New York .

2. Defendant(s) resides within the jurisdictional limits of this court.

3. The defendant(s) entered into a credit card agreement account number 5424180566711013 with CITIBANK wherein defendant(s) agreed to pay CITIBANK all amounts charged to said account by the authorized use thereof.

4. The agreement containing the terms and conditions governing the use of the charge account, including terms of payment was issued to defendant(s) .

5. Thereafter defendant(s) incurred charges by use of the said account in the sum of $2,180.21 .

6. There is now due and owing the plaintiff , as the assignee of the account from the defendant(s) the agreed sum of $2,180.21 .

### SECOND CAUSE OF ACTION

7. Plaintiff repeats, realleges and reiterates each and every allegation contained in paragraphs 1-6 as if set forth at length.

8. Plaintiff's predecessor in interest mailed monthly statements required by the agreement to the defendant(s) thereby rendering a full just and true account of all unpaid amounts charged by the defendant(s) which are due and owing, and defendant(s) received, accepted and retained same without objection.

9. By reason of the aforementioned, an account stated was taken and had between the plaintiff's predecessor in interest and defendant(s) for the agreed total balance of $2,180.21 .

WHEREFORE, plaintiff demands judgment against defendant(s) on the first cause of action for the sum of $2,180.21 together with pre-suit interest from 12/06/09 to 01/18/10 in the amount of $23.12 for a total sum of $2,203.33 together with accruing interest to the date of judgment plus costs and disbursements of this action and for such further and other relief as the Court deems just and proper and on the second cause of action for the sum of $2,180.21 together with pre-suit interest from 12/06/09 to 01/18/10 in the amount of $23.12 for a total sum of $2,203.33 together with accruing interest to the date of judgment plus costs and disbursements of this action and for such further and other relief as the Court deems just and proper.

PRESSLER and PRESSLER, LLP
305 Broadway 9th Floor
New York, NY 10007
(516)222-7929

PRESSLER and PRESSLER, LLP
Attorneys for Plaintiff

By:
Mitchell E. Zipkin , Esq.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

$\mathcal{2}$

# SUPPLEMENTAL
## AFFIDAVIT OF SERVICE

State of New York         **County of Richmond**        **Civil Court**

Index Number: 002557-10
Date Filed: 2/4/2010



Plaintiff:
**Midland Funding LLC DBA in New York as Midland Funding of Delaware LLC**

vs.

Defendant:
**Thomas Tellefsen**

For:
Pressler & Pressler, LLP
305 Broadway 9th Floor
New York, NY 10007

Received by Accurate Consulting, Inc. to be served on **Thomas Tellefsen, 3855 Amboy Rd Apt 2, Staten Island, NY 10308-2418.**

I, Lucas S. Magarik, being duly sworn, depose and say that on the **14th day of May, 2010** at 6:20 pm, I:

**AFFIXED** a true copy of the **Summons & Verified Complaint bearing index number & date of filing** to the door at the address of: **3855 Amboy Rd Apt 2, Staten Island, NY 10308-2418**, the same being the defendant/respondent's place of **Abode** within the State of New York. Deponent completed service by mailing a true copy of the **Summons & Verified Complaint bearing index number & date of filing** in a postpaid envelope to the address of: **3855 Amboy Rd Apt 2, Staten Island, NY 10308-2418** bearing the words "Personal & Confidential" by First Class Mail on **5/17/2010** and placed in an official depository of the U.S.P.S. in the State of New York.

**Additional Information pertaining to this Service:**
5/12/2010 10:25 am Attempted Service. No response at the defendants residence located at 3855 Amboy Rd Apt 2. Property is a 2 story white duplex, private home in the middle of the bloce. Buzzer #2 to the left of the white door. Driveway to the left of the house.
5/13/2010 12:30 pm Attempted Service. No response at the defendants residence located at 3855 Amboy Rd Apt 2.

I certify that I am over the age of 18 and have no interest in the above action.

Jessica Patton
Notary Public - State of New York
NO. 01PA6207400
Qualified in New York County
My Commission Expires June 15, 2013

Subscribed and Sworn to before me on the 17th day of May, 2010 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

_____
**Lucas S. Magarik**
NYC DCA# 1308456

**Accurate Consulting, Inc.**
**248 West Park Ave.**
**Suite 190**
**Long Beach, NY 11561**
**(718) 634-0439**
Our Job Serial Number: 2010000616
Ref: T94268

3



07/07/2009



12/28/2010

Exhibit 4

State of NEW YORK

MIDLAND FUNDING LLC DBA IN NEW
YORK AS MIDLAND FUNDING OF
DELAWARE LLC,
     Plaintiff

Index Number _____
002557-10

-vs-

File No. _____
T94268

THOMAS TELLEFSEN,
     Defendant(s).

**AFFIDAVIT OF KRISTINE DREWS**

---

    Kristine Drews, whose business address is 16 McLeland Rd Suite101, St. Cloud, MN 56303, certifies and says:

1.    I am employed as a Legal Specialist and have access to pertinent account records for Midland Credit Management, Inc. ("MCM"), servicer of this account on behalf of plaintiff. I am a competent person over eighteen years of age, and make the statements herein based upon personal knowledge of those account records maintained on plaintiff's behalf. Plaintiff is the current owner of, and/or successor to, the obligation sued upon, and was assigned all the rights, title and interest to defendant's CITIBANK account 5424180566711013 (MCM Number 8530956628) (hereinafter "the account"). I have access to and have reviewed the records pertaining to the account and am authorized to make this affidavit on plaintiff's behalf.

2.    I am familiar with the manner and method by which MCM creates and maintains its business records pertaining to this account. The records are kept in the regular course of business. It was in the regular course of business for a person with knowledge of the act or event recorded to make the record or data compilation, or for a person with knowledge to transmit information thereof to be included in such record. In the regular course of business, the record or compilation is made at or near the time of the act or event. The relevant financial information concerning the account includes the following:

---




3.   The account shows that the defendant(s) owed a just and true balance of $2180.21 as of 2009-12-06; and I am advised that interest is due from 2009-12-06 accrued at a rate of 9.0000% as an annual percentage rate, amounting to $23.12, making a total due and owing of $2203.33.

4.   Upon information and belief, this action is based upon a revolving credit agreement entered into between defendant(s) and the original credit grantor. Upon information and belief, pursuant to the agreement, defendant(s) agreed to pay monthly installments to the original credit grantor for all goods and/or services and/or cash advances.  Upon information and belief, defendant(s) used or authorized the use of the credit card account to obtain loans from the original credit grantor for the purpose of obtaining goods and/or services and/or cash advances but failed to make the payments due pursuant to the agreement.



I certify under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

JUN 0 1 2010
_____
Date

_____
Kristine Drews

STATE OF MINNESOTA    )
                      ) ss
COUNTY OF STEARNS     )

The foregoing instrument was acknowledged before me on this __1__ day of __June__, 2010, by Kristine Drews, a Legal Specialist of Midland Credit Management, Inc., a corporation under the laws of the State of Minnesota on behalf of the corporation.

Subscribed and sworn to before me this _____ day of _June_, _2010_.

Notarial Stamp or Seal (or other Title or Rank):



NANCY MARIE KOHLS
Notary Public-Minnesota
My Commission Expires Jan. 31, 2015

_____
Signature of Notary Public or Other Official

NJ44
Pressler and Pressler

AFFIDAVIT OF KRISTINE DREWS - 3

8530956628

AFFRECORD



## CERTIFICATE OF CONFORMITY

I, Jill N Brown,  an attorney-at-law of the State of Minnesota who resides in the State of Minnesota and is fully acquainted with the laws of the State of Minnesota pertaining to the acknowledgment or proof of deeds of real property to be recorded therein, do hereby certify that I am duly qualified to make this certificate of conformity pursuant to Section 299-a of the Real Property Law of the State of New York and hereby certify that the acknowledgment or proof upon the foregoing document was taken by Nancy Marie Kohls, a notary public in the State of Minnesota, in the manner prescribed by the laws of the State of Minnesota and conforms to the laws thereof in all respects.

IN WITNESS WHEREOF, I have hereunto set my signature, this 3rd day of June, 2010.

Jill N Brown, Esq.

Attorney at Law, ID# 278117
State of Minnesota

**mcm**
PO Box 603
Oaks, PA 19456

| MCM Account Number | |
|---|---|
| | **8538634383** |
| **Original ~~Creditor~~** | |
| | **CIT BANK** |
| **CURRENT BALANCE** | |
| | **$1,767.43** |
| **PAYMENT DUE DATE** | |
| | **04-08-2011** |

02-22-2011

18824 - 8119

#BWNHLTH
#0000 0853 8634 3835#
THOMAS A TELLEFSEN
4998 AMBOY RD
STATEN ISLAND, NY 10312-4834

---

# NOTICE OF NEW OWNERSHIP *AND* PRE-LEGAL REVIEW

Dear THOMAS A TELLEFSEN,

Midland Funding LLC recently purchased your CIT BANK account and Midland Credit Management, Inc. ("MCM"), a debt collection company, is the servicer of this obligation.

Midland Credit Management, Inc. is considering forwarding this account to an attorney in your state for possible litigation. However, such forwarding will not occur until after the expiration of the time period described on the back of this letter. Upon receipt of this notice, please call to discuss your options.

If we don't hear from you or receive payment by 04-08-2011, we may proceed with forwarding this account to an attorney.

**What do you need to do to stop this process from continuing?**

    1) Mail in $300.00 and call to set up your remaining payments.
    2) Call us today to see how to qualify for discounts and payment plans.

**LET US HELP YOU!** If the account goes to an attorney, our flexible options may no longer be available to you. There still is an opportunity to make arrangements with us. We encourage you to call us today: **(800) 265-8825**

Sincerely,

Dino Manning, Sr. Group Manager
**(800) 265-8825**

---

### BENEFITS OF PAYING!

➤ **This may be your last chance to work with us before the account goes to an attorney.**

➤ **No additional interest will be charged to your account.**

➤ **Get rid of this debt and get on with your life.**

*Once your account is paid,*

➤ **All collection calls and letters on this account will stop!**

➤ **We will notify the credit bureaus the debt is PAID IN FULL.***

**CALL US TODAY!**
**(800) 265-8825**

Hours of Operation:
M-Th 6am - 7:30pm MST
Fri 6am - 5pm;
Sat 6am - 11am;

---

**NOTICE: PLEASE SEE REVERSE SIDE FOR IMPORTANT DISCLOSURE INFORMATION**
*Please tear off and return lower portion with payment in the envelope provided*

Civil Court of the City of New York
County Of RICHMOND

P&P File Number T94268

---

MIDLAND FUNDING LLC DBA IN ) 
NEW YORK AS MIDLAND FUNDING )
OF DELAWARE LLC )
           **Plaintiff,** )
  )
       -against- )
  )
THOMAS TELLEFSEN )
         **Defendant(s)** )
  )
  )
  )

**<u>AFFIRMATION IN OPPOSITION</u>**

**INDEX NO.: 002557-10**

---

*Mitchell E. Zipkin,* an attorney at law duly admitted and licensed in the State of New York, affirms

that the following statements are true under the penalties of perjury that:

1. I am associated with the attorney for the Plaintiff, and I am fully familiar with all the facts and circumstances of this action.

2. I make this affirmation in opposition to Defendant's Pre-Answer Motion to Dismiss Complaint because the court does not have jurisdiction pursuant to CPLR § 3211(a)(8). The motion of the Defendant should be denied in all respects.

3. Defendant's affidavit in support of the Pre-Answer Motion to Dismiss Complaint should fail as there is a genuine issue of material fact as to whether Defendant was properly served with the Summons and Complaint in this matter.

4. Service of the summons and complaint pursuant to CPLR § 308(4) upon the Defendant was completed on May 14, 2010, and on May 17, 2010, by mail. See Supplemental Affidavit of Service attached as **<u>Exhibit A</u>**.   Service was accomplished at the same address that is listed on Defendant's Affidavit of Merit in support of this Order to Show Cause that is attached as

5. It is well settled that a process server's sworn Affidavit of Service ordinarily constitutes *prima facie* evidence of proper service. <u>Lattingtown Harbor Prop. Owners Assn., Inc. v. Agostino</u>, 34 AD3d 536, 538 (Second Dept. 2006).

6. Defendant in his Affidavit of Merit states that the Affidavit of Service described the Defendant's residence as a "white, two-story duplex" and claims that the description of the house is fabricated and attaches pictures in an attempt to corroborate this claim.

7. First, the real property records for the property in question list said property as a two story duplex, which is the same description given in the Supplemental Affidavit of Service. See realtor.com public property records for 3855 Amboy Rd., Staten Island, New York attached hereto as **Exhibit C**.

8. Secondly, the proof that Defendant attaches controverts the allegations that he is making with regard to the description of his property. Defendant states that that the house in question is vivid blue, but one of the pictures that Defendant attaches as "Exhibit C" to his Affidavit of Merit shows that one of the walls of the dwelling that surrounds an entrance door is clearly white, which is the color listed on the Supplemental Affidavit of Service. As one looks out from this door, the "buzzer" is to the left. There is no denial from the Defendant that this is not his door. A color copy of the picture is attached as "Exhibit C" to Defendant's Affidavit of Merit.

9. It should also be noted that there is white trim around the outside of both of the doors pictured.

10. Defendant attaches various other date-stamped pictures attempting to corroborate his claim regarding the description of the house, but these pictures are of little probative value. See "Exhibits A through D" attached to Defendant's Affidavit of Merit. Defendant does not claim to have taken these photos and there is no way to know if the date stamps listed on these pictures are accurate and authentic. Even if the date-stamps are valid, Defendant has not

produced any piece of mail the same date or even month the service was accomplished.

11. Defendant states that the driveway is not to the left of his house but to the right. This is of little importance as it is a matter of semantics. If the process server was standing on the property's porch looking out at Amboy Road, the driveway would be to the left of the house. However, if the process server was standing in the middle of Amboy Road, looking at the property the driveway would be to the right of the house.

12. Defendant also does not claim to be the owner of the 3855 Amboy Road property. Notably, there is no affidavit from the owner of the property to attest to the color of house and/or doors of the property on the date of service and any attempt to elaborate now would be improper and "sandbagging" since all proof should be laid bare when the motion is made.

13. On or about May 26, 2010, the undersigned's office served another copy of the Summons and Complaint to the Defendant by regular mail. See **Exhibit D**. On or about July 14, 2010, a Judgment Notice was mailed to the Defendant at the address he lists on his affidavit, attached hereto as **Exhibit E**, which was not returned to this office.

14. Notably, the following documents, attached hereto as **Exhibit F**, were all mailed to the same address, which is the address the defendant lists on his affidavit, that address being: 3855 Amboy Road, Apt. 2, Staten Island, NY 10308:

   - Notice to Defendant on or about March 18, 2010

   - Notice to Defendant on or about June 15, 2010

15. It is noted that your Affirmant's office has never received any returned mail addressed to the Defendant at the address where he was served, nor does he deny residing there on the date of service. Additionally, Defendant fails to attach any admissible proof of problems receiving mail at the address where he was served from the post office. Therefore, Defendant's self-serving and unsupported statement of never receiving "any notices" fails in light of the regularity presumed in U.S. Postal Service mailings.

16. The foregoing demonstrates that Defendant simply ignore this matter until his bank account was restrained.

17. Equally lacking is Defendant's meritorious defense. Defendant does not deny the debt or claim it did not go into default for nonpayment. Defendant merely states that he never received any notices.

**WHEREFORE**, Plaintiff respectfully requests that Defendant's Pre-Answer Motion to Dismiss the Complaint be denied in its entirety.

*Affirmed: March 22, 2011*

PRESSLER & PRESSLER, LLP
*Attorney for Plaintiff*
305 Broadway, 9th Floor
New York, NY 10007
(516) 222-7929

By: _____
Mitchell E. Zipkin, Esq.

**mcm**
Return Mail Only - No Correspondence
Dept.
PO Box 603
Oaks, PA 19456

|||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||

| | | |
|---|---|---|
| | Contact Information: | Tel (800) 265-8825 |
| 03-15-2011 | Hours of Operation: | M-Th 6am - 7:30pm MST<br>Fri 6am - 4pm;<br>Sat 6am - 11am; |
| | Current Owner: | Midland Funding LLC |
| ⁞ᴵᴵᴵ⁞ᴵᴵᴵᴵᴵᴵ⁞ᴵᴵ⁞ᴵᴵ⁞ᴵᴵᴵᴵᴵᴵᴵ⁞ᴵᴵᴵᴵᴵᴵᴵ⁞ᴵᴵ⁞ᴵ⁞ᴵᴵ⁞ᴵᴵᴵ  2344-492 | Original Creditor: | CIT BANK |
| *BUNHLTH<br>*0000 0853 8634 3835#<br>THOMAS A TELLEFSEN<br>3855 AMBOY RD # 2<br>STATEN ISLAND, NY 10308-2418 | Original Account No.: | 6879450129045437269 |
| | MCM Account No.: | **8538634383** |
| | Current Balance: | $1,798.29 |
| | Payment Due Date: | UPON RECEIPT |

Dear THOMAS A TELLEFSEN,

Midland Credit Management, Inc. is the **SERVICER** of the above-mentioned **CIT BANK** account. This is a demand for payment. Please include a check or money order for the Current Balance due. Once the balance has been received, the three major credit reporting agencies will be notified that the account is paid in full.*

Please do not hesitate to contact me at (800) 265-8825, Ext.23106 if you have any questions.

Please understand this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.

Sincerely,

**Carmen Martinez X23106,C266**
Midland Credit Management, Inc.

*Your credit report will not be updated if the federal reporting period has expired.

New York City Department of Consumer Affairs License Number 1140603, 1207829, 1207820, 1227728.

**MAIL PAYMENTS TO**: P.O. Box 60578, Los Angeles, CA 90060-0578

**MAIL CORRESPONDENCE BUT NO PAYMENTS TO**: MCM's business address at 8875 Aero Drive, Suite 200, San Diego, CA 92123

*Please tear off and return lower portion with payment in envelope provided*

---

## *Payment Certificate*

THOMAS A TELLEFSEN
3855 AMBOY RD # 2
STATEN ISLAND, NY 10308-2418

| | |
|---|---|
| MCM Account Number: | 8538634383 |
| Current Balance: | $1,798.29 |
| **Amount Due:** | **$1,798.29** |
| Make Check Payable to: | Midland Credit<br>Management, Inc. |
| **Payment Due Date:** | **UPON RECEIPT** |

**mcm**
Midland Credit Management, Inc.
P.O. Box 60578
Los Angeles, CA 90060-0578
||||||||||||||||||||||||||||||||||||||||||||||

12 8538634383 5 0005000 041411 0